INDIANAPOLIS RAILWAYS, INCORPORATED *v.* WILLIAMS.

[No. 17,281. Filed March 1, 1945.]

384

*Arthur L. Gilliom, Elbert R. Gilliom, Karl J. Stipher,* and *B. E. Sattler,* all of Indianapolis, for appellant.

*Frank C. Dailey, Paul Y. Davis, Harvey B. Hartsock, George S. Dailey* and *James E. Lesh,* all of Indianapolis, for appellee.

HAMILTON, J.—This is an action brought by appellee by next friend to recover damages for personal injuries sustained by him when 14 years of age in a collision between a bicycle on which he was riding and the side of a north bound trackless trolley car within the crosswalk area on the north side of the intersection of Washington and Illinois Streets in the city of Indianapolis, Indiana, on the theory that the injuries were proximately caused by the alleged negligence of appellant's operator who was in charge of the trackless trolley.

The accident on which the action is based occurred at 1:52 p. m. on September 15, 1942, while the trackless trolley was in the process of making a right-hand turn from Washington Street north on Illinois Street, through the pedestrian traffic on the north crosswalk, on the regular route of said trackless trolley as a common carrier passenger vehicle, and while appellee was riding his bicycle west along the north side of Washington Street, intending to cross Illinois Street. The bicycle contacted the right side of the trolley car near its right front wheel, causing appellee to fall off his bicycle and catch his left foot under the right front wheel of the trolley car. The injuries to appellee's left foot necessitated the amputation of three toes, to wit: the big toe and the second and third toes of his left foot.

The cause was tried by jury and resulted in a verdict being rendered in favor of the appellee in the sum of $7500 and, after plaintiff filed a remittitur of $2000 pursuant to the order of the trial court, appellant's motion for a new trial was overruled and judgment rendered in favor of appellee and against appellant in the sum of $5500, from which this appeal is prosecuted.

The error assigned in this court is the overruling of the appellant's motion for a new trial. The errors assigned in the motion for new trial and presented in this court are: (1) The verdict rendered by the jury in the cause is not sustained by sufficient evidence; (2) The court committed errors of law at the trial of the cause in overruling and denying each of defendant's written motions made at the close of plaintiff's evidence and at the close of all of the evidence for a directed verdict in favor of the defendant; (3) The verdict of the jury is contrary to law; (4) The damages assessed in the verdict are excessive; (5) The court erred in giving to the jury, at appellee's request

and over appellant's specific written objections thereto, instructions Nos. 10, 4, and 8, respectively. All other assigned reasons in the motion for new trial are waived by the failure of appellant to present them under the propositions, points and authorities of its brief in this cause. *Myers* v. *Brane* (1944), *ante,* p. 144, 57 N. E. (2d) 594; *Duffy* v. *Hayden* (1943), 114 Ind. App. 125, 50 N. E. (2d) 666; *Moore v. Ohl* (1917), 65 Ind. App. 691, 116 N. E. 9.

The complaint, in one paragraph, charged appellant with negligence in each of the following particulars, to wit: (1) That defendant carelessly, negligently, and recklessly failed and neglected to warn plaintiff of the approach of said trackless trolley by blowing a horn; (2) That defendant carelessly, negligently, and recklessly failed and neglected to stop said trackless trolley prior to the time defendant drove said trackless trolley into and against the bicycle on which plaintiff was riding; (3) That defendant, while so driving and operating the said trackless trolley at said time and place aforesaid, carelessly and negligently failed to keep a lookout for other persons and vehicles using said highway; (4) That defendant carelessly and negligently failed and neglected to keep said trackless trolley under control so as to avoid striking plaintiff; (5) That defendant carelessly, negligently, and with reckless disregard for the safety of others, and particularly for the safety of the plaintiff, failed and neglected to permit west bound traffic, and particularly this plaintiff, to clear before turning said trackless trolley onto said Illinois Street; (6) That defendant carelessly and negligently, with reckless disregard for the safety of others and particularly for the safety of this plaintiff, drove said trackless trolley through said west bound traffic and into and against the bicycle on which said plaintiff was riding.

In the first assignment of error appellant most earnestly contends that the verdict of the jury is not sustained by sufficient evidence. This assignment requires us to examine the record to ascertain whether or not there is any competent, substantial evidence to be found in the record to support the verdict. In doing this, we are not permitted to weigh conflicting evidence, or to substitute our judgment as to the weight of the evidence for that of the jury, which has received the approval of the trial court in overruling the motion for new trial.

An examination of the record discloses that there is evidence in the record favorable to appellee, which is the only evidence that we are permitted to consider in determining the assignment that the verdict is not sustained by sufficient evidence and the correctness of the ruling of the trial court in overruling each of appellant's motions for a directed verdict, which tends to establish the following facts:

That on September 15, 1942, the date of the accident, the appellee, Edward Williams, was 14 years of age; that he resided with his mother at 512 North Beville Street, Indianapolis, Indiana, which is in the northeast part of the city of Indianapolis from the place where the accident occurred. After lunch on the 15th day of September, 1942, appellee rode his bicycle from his home to the downtown district in the city of Indianapolis; that he stopped at a drugstore at the northeast corner of Pennsylvania and Washington Streets, parked on the sidewalk, and went inside of the drugstore to get a drink of water. Upon leaving the drugstore, he walked his bicycle along the north sidewalk on Washington Street from Pennsylvania Street west two blocks to the intersection of Washington and Illinois Streets.

That Washington Street runs due east and west and

is intersected at right angles by Illinois Street running north and south. That there are double street car tracks in the center of Washington Street, known as the west bound or north track and east bound or south track; that double street car tracks are also located in the center of Illinois Street, known as the north bound or east track and the south bound or west track; that the distance from the north rail of the west bound car track in Washington Street to the north curb line of Washington Street is 32 feet, 3 inches; that from the curb line over to the building, or property line, on the north side of Washington Street is a sidewalk which is 20 feet, 5 inches in width; that there is also constructed adjacent to and along side of the north rail of the west bound track in Washington Street a safety zone, or loading platform, for the purpose of passengers boarding and alighting from west bound street cars and trackless trolley cars; that the distance from the north edge of the safety or loading zone to the north curb of Washington Street is 24 feet, 3 inches; that this space between the north edge of the safety zone and the north curb of Washington Street is used for all vehicular traffic moving west upon and over Washington Street. That at the west end of the safety, or loading platform aforesaid there is located, operated, and maintained an automatic electric traffic signal which displays a green or "go" light and a red or "stop" light for traffic moving west on Washington Street across Illinois Street. That there is located at said intersection a curved car track, leaving the west bound track in Washington Street and curving in a northwesterly direction onto the north bound car track in Illinois Street. That this curved track leaves the west bound track in Washington Street a short distance west of the west end of the safety, or loading platform, located in Washington Street, as

above described, and connects with the north bound car track in Illinois Street within the area of the crosswalk extending along the north side of Washington Street across Illinois Street; that the distance between the east rail of the north bound car track in Illinois Street and the curb line on the east side of Illinois Street is 22 feet, 2 inches.

That when appellee reached the intersection of Washington and Illinois Streets, he set the bicycle in the gutter along the north side of Washington Street at a point about 10 feet east of the automatic electric traffic signal, above described. That after placing his bicycle in the gutter, appellee looked at the light showing on said traffic signal and the green light was showing, which meant "go." That thereupon appellee started to ride his bicycle west along the north side of Washington Street within one or two feet of the north curb, intending to cross Illinois Street. That he continued to ride due west for a distance of approximately 35 feet, or something like that, until he reached the car tracks located at said intersection and used by street cars and trackless trolleys turning north from Washington Street onto Illinois Street; that, just as the appellee reached the car tracks, he got a glimpse of a trackless trolley car approaching from the rear, or his left, and appellee turned his bicycle sharply to the right to avoid a collision with the trolley car; that he was almost to the east rail of the curving car tracks running from Washington Street north onto Illinois Street when he saw the trolley; that, when appellee turned to the right, the right side of the front of the trolley car hit the left handle bars of his bicycle and threw appellee off his bicycle and caught his left foot under the right front wheel of the trolley. The trolley stopped on his foot. That appellee did not hear the trackless trolley that ran

onto his left foot blow any horn prior to the impact between the bicycle and the trolley car; that the collision occurred just about the middle, or slightly north of the center, of the crosswalk extending along the north side of Washington Street across Illinois Street. That appellee did not see the trackless trolley which struck his bicycle until he had reached the track curving from Washington Street north onto Illinois Street and upon which the trackless trolley was traveling; that the trolley was on his left side and he noticed it just a second before the impact. That he turned to the right to keep from being hit. That, when appellee got on his bicycle and started to go west upon Washington Street across Illinois Street, he looked all over and didn't see anything at his side and he didn't think that anything would turn in back of him; that he looked to his right and then proceeded west while the green light was showing; that he knew trolleys turned off Washington Street onto Illinois Street, but he also knew that they were supposed to stop and let other traffic go by; that at the time appellee reached the curved track he was looking straight ahead but that he had looked to his left and in front to see if any cars were coming and he didn't think anything would turn in back of him. That, as he approached the curved track, he looked left because he heard something. That, after he got on his bicycle and started west until he saw the trackless trolley, he was looking straight ahead and to the right; that he never looked back until after he got out to where he saw the trolley car, at which time he just glanced and saw it as he looked to the left, but that before entering into the intersection he had looked to his left. That the trackless trolley car which collided with appellee's bicycle was a Central Avenue Trolley and was traveling its regular route from Pennsylvania and Washington Streets

west to Illinois and then north on Illinois Street. That the trolley had stopped at the loading zone on Washington Street for the purpose of discharging and loading passengers. That, when the traffic light at the west end of the loading zone showed green for west bound traffic on Washington Street, the trolley car proceeded a distance of approximately 20 feet out into the intersection and stopped to let west bound traffic go by and, when the traffic sign had changed and showed green, or the "go" sign for north and south bound traffic on Illinois Street, the trolley proceeded around the curved track onto Illinois Street. That the operator did not see the boy and didn't know where he came from; that pedestrians were walking along, moving east and west on Washington Street. That the operator of the trolley car heard a scream outside; some man hollered and said, "back it up you are on someone's foot." And the operator looked and saw the boy; that he backed the trolley car and set the brakes.

That when the trolley operator started up to go north onto Illinois Street, he did not see a bicycle; that at the time of the accident he was watching traffic and pedestrians in front of the trolley. It was the custom to wait until all the west bound traffic cleared before proceeding north into Illinois Street; that he was not watching to his right or the east at the time that he proceeded north onto Illinois Street as traffic had already stopped; that he didn't see the boy until after he had stopped his car; that he didn't notice any thump, or anything; that he was going through a pedestrian lane where several people were walking and had stopped to let him go; that it has happened so many times that people didn't look; that from the time he made the first stop until he stopped the trolley car after completing the turn, he did not look in the rear

vision mirror for any persons on the right side of the trolley car and he didn't see the boy until after the accident. While the trolley car rested in the safety zone and while the green light was showing for west bound traffic, the operator had noticed other cars on his right, or upon the north side of Washington Street, traveling west, proceeding on across the intersection while the green light was showing.

It is also true that there is evidence in the record which contradicts part of the foregoing evidence and that appellant produced a larger number of witnesses than the appellee. It was the exclusive province of the jury to weigh the evidence, reconcile, if possible, any conflict in the testimony of the witnesses, and then decide whom they would believe. It is firmly established that the jury, as the trier of the facts, is not bound by the testimony of any one witness. *Cleveland etc.* v. *Starks* (1915), 58 Ind. App. 341, 362, 106 N. E. 646, 653; *Superior etc.* v. *Holloway* (1943), 113 Ind. App. 320, 48 N. E. (2d) 83; *Sam* v. *Allie, Admr.* (1943), 114 Ind. App. 156, 51 N. E. (2d) 393. Furthermore, the jury have the right to believe a part of the testimony of a witness and disbelieve and reject a part thereof. *Sam* v. *Allie, Admr.* (1943), 114 Ind. App. 156, 51 N. E. (2d) 393. In this connection, we quote with approval the language of this court in the case of *Lowman* v. *Lowman* (1941), 109 Ind. App. 163, 174, 33 N. E. (2d) 780:

> "The evidence of one witness, even though a party, may, and often ought to have, more weight in the proper decision of the cause than the testimony of a dozen adverse witnesses. *Johnson* v. *Holliday* (1891), 79 Ind. 151, 154.
>
> "Only the trial court sees the witnesses on the stand, their demeanor in testifying, their candor, or lack of candor, in disclosing facts about which they have knowledge. Juries and trial courts, quite

often, properly, give more weight to the demeanor of witnesses than to the substance of their statements in the determination of truth. An appellate court, considering only the statements, is denied the assistance of this necessary factor."

Testing the evidence in this cause by the foregoing standards, it is our opinion that there is sufficient evidence in the record to sustain the verdict of the jury.

In connection with its contention that the verdict is not sustained by sufficient evidence, appellant asserts that because appellee was 14 years of age at the time of the accident he was *sui juris*, and therefore he must be charged with the consequences of his acts as an adult and that under the evidence disclosed by the record he is chargeable with contributory negligence as a matter of law. To support this contention, appellant cites, and relies upon, the following Indiana authorities, to wit: *Brush* v. *Public Service Co.* (1939), 106 Ind. App. 554, 563, 21 N. E. (2d) 83; *Kent* v. *Interstate Public Service Co.* (1929), 97 Ind. App. 13, 20, 168 N. E. 465; and *Bottorff* v. *South Construction Co.* (1916), 184 Ind. 221, 227, 110 N. E. 977. It is our opinion that the facts in each of the above cases are readily distinguishable from the facts in the instant case and that neither of the cited cases are controlling in this appeal. In the case of *Bottorff* v. *South Construction Co.* (1916), 184 Ind. 221, 110 N. E. 977, the facts were as follows:

The defendant, South Construction Company, owned and operated a stone quarry upon which premises it kept and stored large quantities of dynamite, dynamite caps, and fuse, which were used in blasting stone in said quarry. During the month of December, 1911, a 14 year old boy, named Kock, together with other boys, was playing about the premises and building where

the caps, fuse, and dynamite were stored. The Kock boy obtained a quantity of caps, fuse, and explosives and carried them to his home. Thereafter, the Kock boy gave a part of the caps, fuse, and explosives to the plaintiff, a 12 year old boy, who had no knowledge or information of the use or dangerous character of the caps, and, while handling the same, held a lighted match to the mouth of one of the caps, causing it to explode and thereby seriously injure the plaintiff. The plaintiff brought an action against the defendant, South Construction Company, to recover damages for the personal injury sustained as a result of the explosion of the caps, which the 14 year old boy, Kock, had given to the plaintiff. A demurrer to the complaint was sustained and upon appeal to the Supreme Court the question presented and decided was: Whose negligence, if any, was the proximate cause of the plaintiff's injuries,—the alleged negligence of the South Construction Company in keeping the caps and explosives where they were accessible to third persons, or the intervening act of the Kock boy in obtaining the caps and explosives and then giving them to the plaintiff? On pages 226 and 227 of 184 Ind. the Supreme Court of Indiana says:

"It must be conceded that,. if it can be said as a matter of law that the fourteen-year-old boy was sui juris then his giving the dangerous cap to appellant was the direct or proximate cause of the injury complained of, as his act was in no way connected with the storage of the caps, except that he was enabled to procure them. . .

"It has been laid down by law-writers and the courts that the time of infancy is divided into three distinct periods, during each of which different presumptions prevail as to their responsibility for crimes committed; the first period is that up to the age of seven years, during which the infant is conclusively presumed to be incapable of under-

standing the nature of crime and can in no way be held responsible therefor; the second is that between the ages of seven and fourteen years. An infant between these ages is presumed to be incapable of committing crimes, but the presumption may be rebutted by proof that the infant possessed sufficient discretion to be aware of the nature of the act. *The third period is after the age of fourteen years when the infant is presumed to be capable of committing crime, and can be held therefor the same as an adult.* 22 Cyc 622, *et seq.,* and cases cited. *It seems that the greater weight of authority is to the effect that the same rule applies in negligence cases.* 29 Cyc 539. 2 Modern Am. Law 685, 686; *Kehler* v. *Schwenk* (1891), 144 Pa. St. 348, 12 L. R. A. 374, 27 Am. St. 633; *Coolbroth* v. *Pennsylvania R. Co.* (1904), 209 Pa. St. 433, 58 Atl. 808.

"*The fourteen-year-old boy, under the law, was guilty of trespass and larceny in taking the caps, and if he gave them to appellant,* and appellant did not know of their dangerous character and was injured by an explosion, *would be liable in damages to appellant.*" (our italics)

It is readily apparent that the Supreme Court was only discussing and deciding the capacity and capability of a normal 14 year old boy to be chargeable and held liable to respond in damages for any negligent act or tort, committed by him, which results in injury to another. It is equally well settled that such a boy is capable of being charged with contributory negligence, but the question as to what constitutes contributory negligence was not discussed in the Bottorff case.

In the case of *Brush* v. *Public Service Co.* (1939), 106 Ind. App. 554, 21 N. E. (2d) 83, the facts were: The company constructed and maintained a transformer platform adjacent to the roof of a factory building in such close proximity thereto that children were accustomed to, and did, play about the premises and used the transformer platform as a means of climbing

upon the roof of the factory building, all of which facts were known to the defendant. The plaintiff, a 14 year old boy was injured by coming in contact with the defendant's electric wires while using the transformer platform as above stated, and sued the company to recover damages for his personal injuries. In considering whether or not the plaintiff, a 14 year old boy, was capable of being charged with contributory negligence, this court says on page 563 of 106 Ind. App.:

> "Under the decisions of this court and our Supreme Court, appellant, under such circumstances, must be charged as a matter of law with the consequences of his acts as an adult. *Bottorff* v. *South Construction Co.* (1916), 184 Ind. 221, 110 N. E. 977; *Kent* v. *Interstate Public Service Co.* (1933), 97 Ind. App. 13, 168 N. E. 465.
>
> "Considering that appellant is *sui juris,* and as a matter of law charged with the consequences of his acts as an adult, together with the undisputed facts showing the manner in which he ascended to the platform, his purpose in so doing, the location and type of structure, his convenience and necessity of being on the platform, and the opportunity and obvious likelihood of danger, we can not perceive upon what theory appellant could escape the consequences of his own acts and avoid being guilty of contributory negligence as a matter of law."

It is clear that when the court used the language "Considering that appellant is *sui juris,* and as a matter of law charged with the consequences of his acts as an adult," the only question being considered was that of the minor's capability of being charged with contributory negligence and that the degree of care required to be exercised by the minor to avoid being held guilty of contributory negligence was not being discussed or attempted to be defined by the court in using the language last above quoted.

In the case of *Kent* v. *Interstate, etc.* (1929), 97 Ind. App. 13, 168 N. E. 465, the facts involved the accidental death of a 14 year old boy, who had climbed to the top of a large iron bridge girder forming the side and upright part of a bridge in a public highway and came in contact with an uninsulated electric transmission wire maintained by the appellee, Interstate, etc., Co. The boy's mother sued to recover damages for his death. The question involved upon appeal was whether or not the boy was guilty of contributory negligence. On page 19 of 97 Ind. App. the court, in discussing the question as to the capability of the 14 year old boy for being chargeable with contributory negligence, says:

"But appellant's decedent was a bright healthy boy aged fourteen years and five months at the time of his injury and therefore *sui juris* under the law of Indiana, and chargeable as a matter of law with the consequences of his act as an adult. *Bottorff* v. *Smith Const. Co.* (1916), 184 Ind. 221, 226, 110 N. E. 977."

Again, it is clear that, when the court used the words "chargeable as a matter of law with the consequences of his acts as an adult" and cites *Bottorff* v. *South, etc., supra,* the court is referring to the minor's capability and capacity and not to any particular standard of conduct. For the foregoing reasons, it is our opinion that neither of the above cases are decisive of the questions presented by this appeal, and that the question of contributory negligence upon the part of the plaintiff was exclusively a question of fact to be determined by the jury as the triers of the facts under proper instructions.

Appellant next assigns as error the rulings of the court in overruling the motions for a directed verdict made at the close of the plaintiff's evidence and again

at the close of all of the evidence. These motions were based upon the propositions that (a) there was not sufficient evidence to go to the jury to sustain any one of the several acts of negligence charged in the complaint, and (b) that the evidence most favorable to appellee shows as a matter of law that plaintiff himself was guilty of negligence which was a proximate cause of the injuries which he sustained as a result of the collision between his bicycle and appellant's trolley car.

As we have heretofore pointed out, we believe there was ample evidence to submit to the jury upon the question of appellant's negligence as charged in the complaint. With reference to the issue of contributory negligence, the burden to establish such negligence rested upon the appellant and under the rules stated by the Supreme Court of Indiana in the case of *Heiny, Admx.* v. *Pennsylvania R. Co.* (1943), 221 Ind. 367, 47 N. E. (2d) 145, we are of the opinion that there was no error in overruling said motions for a directed verdict. On page 374 of 221 Ind. the court says:

> "Such burden is no different in character than that which rests upon a plaintiff to establish negligence on the part of the defendant. The limitation on the power of the trial court to direct a verdict for the defendant on the issue of the plaintiff's contributory negligence is necessarily the same as that which would apply to the direction of a verdict for the plaintiff on the issue of the defendant's negligence. Consistency compels the conclusion that there may be no such direction in any case where the determination of the question in issue depends upon conflicting evidence or the credibility of witnesses. *Haughton* v. *Aetna Life Ins. Co.* (1905), 165 Ind. 32, 73 N. E. 592, 74 N. E. 613; *Jacobs* v. *Jolley* (1902), 29 Ind. App. 25, 62 N. E. 1028."

*Vogel* v. *Ridens* (1942), 112 Ind. App. 493, 44 N. E. (2d) 238.

Appellant insists that the verdict is contrary to law for the reason that the evidence is insufficient to establish negligence upon the part of the appellant and that the evidence shows appellee to have been guilty of contributory negligence. What we have heretofore said with reference to the sufficiency of the evidence disposes of this contention, and further discussion is unnecessary.

Appellant complains of the action of the court in giving to the jury at plaintiff's request instruction No. 10, which reads as follows:

"A person riding in a public street or highway on a bicycle is required to use ordinary care to avoid being injured by coming in contact with cars or vehicles operated or driven in the street. He has a right to presume that persons in charge of cars and other vehicles will use ordinary care to avoid injuring him. If you find that plaintiff, in the operation of his bicycle at the time and place referred to in the complaint, was injured and that at said time he was using such care as should be ordinarily expected from a boy of like age, knowledge and experience to protect himself from injury by trackless trolleys being operated in a reasonably careful manner, then plaintiff discharged his full duty and was not guilty of contributory negligence."

Appellant's specific objection to this instruction, as stated under points and authorities of its brief, is that the appellee, having been 14 years old at the time of the accident, is considered *sui juris* and as a matter of law charged with the consequences of his acts as an adult on the question of contributory negligence, that the legal standard of care for one who is as a matter of law

charged with the consequences of his acts as an adult is ordinary care, which is synonymous with reasonable or due care and is such care as a person of reasonable or ordinary prudence would exercise in view of all the conditions and circumstances, as disclosed by the evidence in the particular case. Appellant again cites and relies upon *Brush* v. *Public, etc., supra, Kent* v. *Interstate, etc., supra;* and *Bottorff* v. *South, etc., supra,* to sustain its contention with reference to said instruction No. 10, *supra.*

In the case of *Cole* v. *Searfoss* (1912), 49 Ind. App. 334, 97 N. E. 345, this court discussed the standard, or degree of care, which a child who is *sui juris* must exercise for its own safety in order to avoid being guilty of contributory negligence. On page 342 of 49 Ind. App. the court says:

"Where a child is *sui juris* it is held to be capable of exercising some care and discretion, but it is not necessarily held to the same degree of care required of a person of mature years. The care which the law exacts of such a child is only such as it was capable of exercising in view of its age, knowledge and experience, and it is guilty of negligence only when it fails to exercise the care so exacted. In most cases the amount of care required of such a child is a question of fact for the jury. *Indianapolis, etc., R. Co.* v. *Wilson* (1893), 134 Ind. 95; *Keller* v. *Gaskill* (1894), 9 Ind. App. 670; *Louisville, etc., R. Co.* v. *Sears* (1894), 11 Ind. App. 654."

In the case of *Keller* v. *Gaskill* (1894), 9 Ind. App. 670, 683, 36 N. E. 303, the rule is stated in the following language:

"We fully agree with the appellee's learned counsel that, under the peculiar circumstances, as to age, experience, etc., of the appellee, the question of contributory negligence is one for the jury. What would be negligence in the appellee might or might not have been negligence in another boy of

even the same age, and *vice versa*. We are furthermore disposed to adopt the definition of what constitutes due care in a case like this, as given by appellee's counsel from the cases cited by them, viz: 'Just such care as boys of that age, of ordinary care and prudence, would use under like circumstances,' and 'that a child is held to no greater care than is usually possessed by children of the same age.' But although a boy of the age of appellee is not required to use as much care as an adult, nor more, perhaps, than such as is commensurate with his maturity and capacity, it can not be claimed that he is not required to exercise reasonable care according to the circumstances."

In the late case of *Town of Argos* v. *Harley* (1944), 114 Ind. App. 290, 49 N. E. (2d) 552, this court had under consideration the question as to what particular conduct upon the part of a child would constitute contributory negligence, and Judge Crumpacker, speaking for the court, on pages 304 and 305 of 114 Ind. App., says:

"In a recent case this court said the following in reference to contributory negligence on the part of children: 'While due care, or ordinary care, is measured by the care that a person of reasonable prudence would ordinarily exercise under like circumstances, this is not true where the actor is a child. . . The care that must be exercised by a child is measured by the care that children of like age, knowledge, judgment and experience would ordinarily exercise under like conditions and circumstances.' *Tabor* v. *Continental Baking Company* (1942), 110 Ind. App. 633, 38 N. E. (2d) 257. This is the rule universally announced by numerous decisions. See Restatement of the Law, Torts, Negligence, Sec. 283, p. 741, Comment: e. Children."

A petition to transfer was denied by the Supreme Court. See also: *Indianapolis, etc. v. Croly* (1911), 54 Ind. App. 566 on 574, 96 N. E. 973. We believe that

the above authorities correctly state the law applicable to the facts disclosed by the record in the instant case, and when instruction No. 10 is read in connection with the law as stated in the foregoing cases, it is our opinion that the court did not err in giving said instruction to the jury.

Appellant next complains of instruction No. 4, given to the jury at plaintiff's request. This instruction reads as follows:

"Plaintiff in his complaint alleges a number of specific acts of negligence on the part of the defendant. While as a necessary element of his case, plaintiff must prove that defendant was negligent and that such negligence was the proximate cause of his injuries, yet it is not necessary, in order to entitle plaintiff to recover, that he prove each of the acts of negligence charged in the complaint. But if you are satisfied by a preponderance of the evidence that plaintiff has proved any one or more of the acts of negligence charged in the complaint, then if such act or acts of negligence was or were the proximate cause of plaintiff's injury, if any, and if he was not guilty of contributory negligence, I instruct you that your verdict should be for the plaintiff."

Appellant's objection to this information is that it characterized allegations of negligence as "acts of negligence" and thereby invaded the province of the jury to determine whether conduct which the complaint alleges was negligence, was in fact negligence. Appellant cites *American Hominy Co.* v. *LaForge* (1916), 184 Ind. 600, 602, 604, 111 N. E. 8; and *McBeth-Evans Glass Co.* v. *Brunson* (1919), 70 Ind. App. 513, 122 N. E. 439, to support its objection to this instruction.

In said instruction No. 4 the court told the jury that, if the plaintiff proved any one or more of the

acts of negligence charged in the complaint, and such act or acts of negligence was the proximate cause of plaintiff's injury, if any, and if plaintiff was not guilty of contributory negligence, their verdict should be for the plaintiff. By referring to the allegations contained in the complaint we find that the various alleged acts of negligence charged against the defendant were alleged to have been done carelessly and negligently and that they were the direct and proximate cause of the accident and plaintiff's injuries. It is firmly established in Indiana that instructions must be construed as a whole and that the test is: Was the jury misled by the language contained in any one instruction? If the instructions as an entirety correctly state the law applicable to the evidence and the issues, then error in any one instruction does not constitute reversible error. *Curnick* v. *Torbert* (1935), 101 Ind. App. 113, 194 N. E. 771; *Kraning* v. *Taggart* (1936), 103 Ind. App. 62, 70, 1 N. E. (2d) 689; *Mishler* v. *Chicago, etc. R. Co.* (1919), 188 Ind. 189, 195, 122 N. E. 657, 659.

Applying this rule of construction to instruction No. 4, we do not believe that the jury were misled, or that the giving of said instruction was reversible error. *Jones* v. *Cary* (1941), 219 Ind. 268, 286, 287, 37 N. E. (2d) 944; *Indianapolis, etc. R. Co.* v. *Boyd* (1944), 222 Ind. 481, 53 N. E. (2d) 762, 767.

Appellant next complains of the giving of instruction No. 8, requested by the plaintiff. In its written objection to this instruction, in conformity to Rule 1-7 of the Supreme Court, appellant said "there is no objection to the instruction as a correct statement of law, but there is no issue or evidence in the cause to render the instruction applicable; . . . therefore, the instruction would be misleading

to the jury; *the giving of it is objected to by defendant on the ground that it is inapplicable and misleading.*" (our italics) Under propositions, points and authorities of its brief appellant says that "Instruction No. 8 given at plaintiff's request was erroneously given and is harmful in that there is no issue or evidence to which it could apply *and was confusing and misleading to the jury.*" (our italics) It has been held repeatedly by this court and the Supreme Court that under Rule 1-7 the objections to an instruction must be specific and that an objection to the effect "that an instruction is misleading" is not a specific objection, but is too general to present any question upon appeal. *Mackey* v. *Niemeyer* (1942), 113 Ind. App. 10, 12, 44 N. E. (2d) 520; *Drewrys, etc. v. Crippen* (1942), 113 Ind. App. 120, 44 N. E. (2d) 1006; *Keeshin, etc. v. Sowers* (1943), 221 Ind. 440, 48 N. E. (2d) 459; *Riechmann* v. *Reasner* (1943), 221 Ind. 628, 51 N. E. (2d) 10. The court did not err in giving said instruction No. 8 to the jury.

Appellant's last assignment of error is that the damages assessed, after remittitur, viz: $5500, are excessive.

The evidence discloses that appellee's left foot was severely crushed and injured, necessitating the amputation of three toes. Appellee was operated upon three times and a fourth operation may be necessary to prevent constant scabbing. The amount of damages was peculiarly within the province of the jury and, in view of all the evidence in the record upon that subject, we cannot say that the amount of the judgment is so grossly and outrageously excessive as at first blush to induce the belief that the jury was actuated by prejudice, partiality, or corruption in assessing the damages. *Swallow, etc.* v. *Cosgrove* (1938), 214 Ind. 532, 537, 15 N. E. (2d) 92; *Jones* v. *Cary* (1941), 219 Ind. 268, 287,

37 N. E. (2d) 944; *Shirley Hill, etc. v. Moore* (1914), 181 Ind. 513, 517, 103 N. E. 802.

We have carefully examined the record and considered each of appellant's assignments of error, and fail to find any reversible error.

Judgment of the lower court is hereby affirmed.

NOTE.—Reported in 59 N. E. (2d) 586.