DAVID W. MOORE, BY HERMAN MOORE AS NEXT FRIEND *v.* ROSE-HULMAN INSTITUTE OF TECHNOLOGY AND THE BOARD OF MANAGERS OF ROSE-HULMAN INSTITUTE OF TECHNOLOGY.

[No. 1-275A24. Filed July 28, 1975. Rehearing denied August 28, 1975. Transfer denied March 25, 1976.]

166

*Kendall, Stevenson & Lowry,* of Danville, *Kincaid & Kincaid,* of Lebanon, *Parr, Richey, Obremskey, Pedersen & Morton,* of Lebanon, for appellant.

*Rocap, Rocap, Reese & Young,* of Indianapolis, for appellees.

LOWDERMILK, J.—In the spring of 1971 David W. Moore (Moore) was 16½ years of age and was between the junior and senior years of Lebanon High School, where he made grades of A's and B's.

Moore made arrangements after the close of his junior school year to attend "Operation Catapult" at Rose-Hulman Institute (Rose) and reported there on Sunday, June 17, 1971, with his parents, where he and his parents, together with other students and their parents received a short indoctrination course and met instructors and professors.

Students were informed as to what was expected of them together with rules and regulations for their stay, all of which was by parol only.

Operation Catapult consisted of an academic course in the mornings, and some work in the afternoons and all the evenings the students were at their leisure, with some organized recreation. Moore and other students were assigned to their rooms in Mees Hall, where Moore and another youth were assigned Room 305. There were seven or eight student assistants from Rose who attended Operation Catapult and student assistants were assigned to Mees Hall for the overseeing of high school students attending Operation Catapult. Room 301 in Mees Hall was occupied by one David Lee Johnson who was attending Operation Catapult, and another. Room 301 was over an entrance way to the dormitory, which had a canopy protruding perpendicular to the building above the entrance door, which canopy was as wide as the door. On either side of the door the bricks of the building extended from the face of the building out 3½ bricks long and 1½ bricks wide. There was, of course, a hard surface walk for ingress and egress from this doorway.

The students, having time on their hands in the evening, engaged in much horseplay, such as shaving cream fights, the shooting of bottle rockets and the laking of one another. Laking was a throwing of a fully clothed student into the adjoining lake by several of his fellow students. A major part of the horseplay was the filling of balloons with water and throwing them at one another, both in and outside the building. Shaving cream fights took place inside the building and students were admonished by the student assistant supervisors that they would have to pay for any damage and clean up thereafter, but were never prohibited from engaging therein.

On the night in question, three boys went to West Terre Haute to get firecrackers mounted on a stick to make bottle rockets.

Moore and his roommate went to Mees Hall, Room 301, where student Johnson permitted them to turn out the lights so the three boys on the mission would not be likely to suspect any water balloons as they walked into the building.

Moore's artillery had run short, as he was down to two water filled balloons in a wastebasket. The roommate left with another wastebasket to fill more balloons, after which Johnson left the room and Moore was not known to have been seen by anyone after that until very shortly thereafter he was found on the hard surfaced walk, three stories beneath the window, very critically and permanently injured. In the meantime, the students who were the objects of the water balloons had returned to the building and were the objects of water balloons and would protect themselves by getting under the canopy over the entrance way or stepping to the side of the protrusions of bricks on either side of the entrance.

Room 301 had an air conditioner in the window that extended about the length of it and the top was flush with the window sill. The air conditioner was six inches wide.

Moore was last seen, according to the evidence, sitting on the air conditioner and window sill with one foot on the air conditioner and the other foot inside the room.

The evidence is that by leaning out the window further it was more possible to hit a person standing behind the protrusion of bricks or under the canopy of the building.

### RESULTS OF TRIAL BY JURY.

The jury returned its verdict in favor of the defendants.

### ISSUES.

Issues presented for review all pertain to the final instructions given by the court.

The Court's Final Instruction No. 1 is a standard definition of negligence and Court's Final Instruction No. 2 is a standard definition of reasonable and ordinary care.

Moore admits that these two instructions were proper. However, he argues that the same is not true where the actor is a boy and sets up that the care that must be exercised by a boy is measured by the care that boys of like age, knowledge, judgment and experience would ordinarily exercise under like

conditions and circumstances. He further argues that the giving of Court's Instructions 1 and 2 equate Moore's standard of care with the standard of care of the defendant (adult) which is not proper, and sets out that negligence on the part of the defendant is to not do what a reasonably careful and prudent person would have done under the same or like circumstances, while negligence on the part of the plaintiff is the failure to have exercised such care as boys of like age, judgment, knowledge and experience would ordinarily exercise under like circumstances and conditions.

The court gave, over Moore's written objection, defendant's Instruction No. 4, which is in the words and figures as follows, to-wit:

"A person is chargeable in law with knowledge of such danger as he might know and appreciate by the use of his faculties or powers of observation in order to learn and comprehend the dangers which are naturally instant to the situation and which may be discovered by the use of his faculties."

Moore urges that the giving of Court's Final Instructions numbered 1 and 2 equates Moore's standard of care with the standard of care of Rose, and sets out that negligence on the part of Rose is not to do what a reasonably careful and prudent person would not have done under the same or like circumstances, while negligence on the part of Moore is failure to have exercised such care as boys of like age, judgment, knowledge and experience would ordinarily exercise under like circumstances and conditions.

Moore vigorously insists that Rose's Instruction No. 4 is an erroneous instruction in light of the fact that Moore is a 16 year old boy and is only chargeable with what a boy of like age, knowledge, judgment, and experience would ordinarily know and appreciate by the use of his faculties. He further argues that the jury should have been instructed that the knowledge and awareness of danger is vastly different between a boy and a mature adult, and further, that the knowledge of the danger was different for the plaintiff herein

(Moore) than for adults and that the failure to distinguish the same constituted prejudicial error.

The court gave to the jury plaintiff's Instruction No. 7, which is in the words and figures as follows, to-wit:

"You are hereby instructed that while due care or ordinary care is measured by the care that a person of reasonable prudence would ordinarily exercise under like circumstances, this is not true where the actor is a boy. The care that must be exercised by a boy is measured by the care that boys of like age, knowledge, judgment and experience would ordinarily exercise under like conditions and circumstances.

Town of Argos v. Harley (1944), 114 Ind. App. 290; 494 N.E.2d 552; Indianapolis Railways v. Williams (1944), 115 Ind. App. 383; 59 N.E.2d 586."

It is our opinion that plaintiff's Instruction No. 7 is a correct statement of the law and the care that must be measured by an infant of the age of 16½ years. *Town of Argos* v. *Harley, supra; Indianapolis Railways* v. *Williams, supra.*

### LAW OF THE CASE:

IC 1971, 34-1-67-1 (Burns Code Ed.), Certain words, how construed, sub-section 6, defines the phrase "under legal disabilities" as follows:

"The phrase 'under legal disabilities' includes persons within the age of twenty-one (21) years . . ."

The 1974 cumulative pocket supplement amends sub-section 6 to read as follows:

"The phrase 'under legal disabilities' includes persons under the age of eighteen [18] years, . . ."

and supplements the same by adding paragraph 15, which reads as follows:

"The terms 'infant', 'minor,' or 'person in his minority' mean any person under eighteen [18] years of age. The terms 'adult,' 'of full age' and 'person in his majority' mean any person at least eighteen [18] years of age." 1973, P.L. 313, § 3, p. 1715.

The annotation as to the amendment notes that in subdivision 6 the words "under the" were substituted for the words "within the" and lowered the age limit from 21 to 18. Moore was 16½ years of age when injured and under the construction of the original statute together with the amendment thereto, this court now determines that Moore should be treated as an infant, or a minor.

We have heretofore discussed Moore's argument as to Instructions 1, 2 and 4 in addition to his argument that the standard of care which must be used is the standard of care which a boy of like age, knowledge and circumstances would ordinarily use under like conditions and circumstances.

Moore urges reversible error in the court's giving of Instruction No. 4 for the reason the same did not include the standard of care for boys as set forth in Moore's Instruction No. 7, which the court submitted to the jury. Moore insists that the plaintiff (Moore) must be aware and know the dangers that a boy of like age, experience, and knowledge would know and appreciate by the use of his faculties. As authority for this proposition as to Instruction No. 7, Moore relies on the case of *Indianapolis Railway* v. *Williams, supra,* and the case of *Bixenman* v. *Hall* (1968), 251 Ind. 527, 242 N.E.2d 837, which applied standards as set out in Instruction No. 7 to the case of a 13 year old bicycle rider.

## DECISION:

We cannot agree with Moore in his argument that "it is impossible under the law for the plaintiff [Moore] here to be held to the standard of care of a boy of a like age, knowledge and experience, as well as the standard of care of a reasonably careful and ordinarily prudent man." We do agree with Moore's argument that reasonable care for plaintiff (Moore) was such care as a reasonably careful and prudent boy of like age, knowledge, judgment and experience would ordinarily exercise under like conditions and circumstances.

The court told the jury this by giving plaintiff's (Moore's) Instruction No. 7, and there is no irreconcilable conflict in the instructions.

It was held in *Indianapolis Railway, Inc.* v. *Williams, supra,* that it is a well settled rule of law that a child should exercise that care for his own safety which a child of like age, knowledge and experience would ordinarily exercise under the same circumstances.

This rule was applied to a statutory violation by a 13 year old boy injured while riding a bicycle in *Bixenman* v. *Hall, supra,* wherein the court said:

"Indiana long ago adopted the rule that in negligence cases, the standard of care applicable to a child engaged in the type of activity characteristically engaged in by children is that degree of care that would ordinarily be exercised by children of like age, knowledge, judgment and experience under similar circumstances. *Tabor* v. *Continental Baking Co.* (1941), 110 Ind. App. 633, 38 N.E.2d 257; *Town of Argos* v. *Harley* (1943), 114 Ind. App. 290, 49 N.E.2d 552."

The jury was instructed and apprised of this standard of care by the court's final instructions in the case at bar. The record discloses that Moore was 16½ years of age, was between his junior and senior year in the Lebanon Senior High School and his grades were As and Bs. He was at Rose where he was attending certain scholastic classes in the mornings for a month for him and the proper officials at Rose to determine if he would be admitted to that school after graduation from high school. This evidence was proper to go to the jury and to be considered by them in determining whether Moore was acting as a reasonable and prudent boy of his years and intelligence would act at the time he fell from the third floor window and sustained his very unfortunate injuries.

In the case of *Hollowell et al.* v. *Greenfield* (1966), 142 Ind. App. 344, 216 N.E.2d 537, the standard of care to be exercised by an 11 year old child was said to vary from case

to case and must be fixed by the jury in each case according to its circumstances. This court further said:

". . . The question of what is a reasonable standard of care for an eleven year old boy is so troublesome it belies the imagination. The question presents itself as thus: would an eleven year old boy climb a dangerous tree; would he operate a bicycle in heavy traffic disregarding the rules of traffic; would he play with a loaded firearm given to him by another . . ."

In the case at bar we can allude to *Hollowell, supra,* and ask this question: would a 16½ year old boy who was a senior in high school, making above average grades, sit on an air conditioner on a window sill with one foot on top of the same and the other inside the room and the window open, lean out of the window so far in attempting to strike others by throwing water filled balloons at them that he would fall from a third floor window?

In *LaNoux* v. *Hagar* (1974), 159 Ind. App. 646, 308 N.E.2d 873, a case wherein an 11 year old boy was struck by a car while riding a bicycle, the court determined at the outset that it must determine whether the instructions given were mandatory in character or otherwise. We shall attempt to do that in this opinion.

The courts have held that mandatory instructions are those which attempt to set up a factual situation and then direct the jury to a certain result. They are to be distinguished from instructions which merely state propositions of law without incorporating a factual situation. *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N.E.2d 923.

This court, in citing 2 Wiltrout, Indiana Practice, § 1400, in *Shelby Nat'l Bk., Adm.* v. *Miller* (1970), 147 Ind. App. 203, 259 N.E.2d 450, held the following:

"Except as to mandatory instructions, ambiguity, inaccuracy, or incompleteness of one instruction may be cured by another instruction which is not inconsistent with the other. A party cannot complain of a nonmandatory instruction given by the court, which although incomplete, is a correct statement of the law so far

as it goes where such party did not tender a more full instruction on the subject. 2 Wiltrout, Indiana Practice, § 1400. . . ."

Inasmuch as none of the instructions above quoted in the case at bar direct the jury to reach a certain result under a certain set of facts set forth in the instructions, we now hold that these instructions were not mandatory.

The trial court in its final Instruction No. 4 submitted and read to the jury informed them ". . . all the law in the case is not embodied in any single instruction. Therefore, you must consider these instructions as a whole and construe them in harmony with each other."

Non-mandatory instructions given in a case must be considered as a whole and with reference to each other and not as isolated independent instructions and it is sufficient if considering the instructions as a whole when the jury has been fully and fairly instructed. 2 I.L.E. Appeals § 526, p. 439; Flanagan, Wiltrout and Hamilton, Indiana Trial and Appellate Practice, § 1510, p. 237; *Lutz* v. *Goldblatt Brothers, Inc., etc.* (1967), 140 Ind. App. 678, 225 N.E.2d 843.

It is our opinion that the jury in the case at bar was correctly instructed concerning the standard of care applicable to a child and having considered all the instructions as a whole we are of the opinion that the jury was fairly and adequately instructed, particularly concerning the standard of care owed by Rose to Moore. *Rust* v. *Watson* (1966), 141 Ind. App. 59, 215 N.E.2d 42; *LaNoux* v. *Hagar, supra.*

Finding no reversible error, the judgment is affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 331 N.E.2d 462.