Daniel **HARDSAW** and D.A. Hardsaw, Appellants–Defendants,

v.

Kimberly G. **COURTNEY** and William S. Courtney, Appellees–Plaintiffs.

No. 22A01–9509–CV–280.

Court of Appeals of Indiana.

May 15, 1996.

Rehearing Denied July 25, 1996.

Michael E. Brown, John B. Drummy, Kightlinger & Gray, Indianapolis, for appellants.

Michael J. McDaniel, McDaniel & Briggs, New Albany, for appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Daniel and D.A. Hardsaw (the "Hardsaws") appeal from a jury verdict in favor of Kimberly G. and William S. Courtney (the "Courtneys"). The Courtneys filed their complaint for damages against the Hardsaws after Kimberly was attacked and bitten by the Hardsaws' dog. The Courtneys alleged that the Hardsaws negligently entrusted their premises, including the dog, to their twelve-year-old minor daughter.

We affirm.

### ISSUES

The Hardsaws present two issues for our review which we restate as:

1. Whether there is sufficient evidence to support the verdict.

2. Whether the trial court erred when it instructed the jury concerning the vicious propensity of the dog.

### FACTS

The facts most favorable to the verdict reveal that in late 1987 Kimberly Courtney and her family moved into their Georgetown residence which was located across the street from the Hardsaws. On November 30, 1991, the Hardsaws traveled to Leavenworth, Indiana. They left their twelve-year-old daughter, Diana, and seventeen-year-old son, Jamie, at home, but were aware that Jamie was going to be leaving. The Hardsaws' coon dog, Buster, also remained at the residence chained in their yard. The Hardsaws instructed Diana to stay in the house and to call them if she had any problems.

Later that afternoon, Kimberly was across the street in her home when she heard the sounds of an animal yelping and crying. She

went outside and saw that Buster was tangled in his chain, hanging upside down and foaming at the mouth. Because no cars were parked in the Hardsaws' driveway, Kimberly believed that no one was home and attempted to reach Mr. Hardsaw at his work number. While on the telephone, Kimberly saw Diana open the front door of the house in order to let the Hardsaws' other two dogs outside. Kimberly crossed the street, knocked on the Hardsaws' door and informed Diana of Buster's predicament. Diana came outside and asked Kimberly to wait for a minute while Diana tried to untangle Buster. When Diana could not get the chain untangled she unhooked the chain from Buster's collar. Buster, who was approximately the same size as Diana, escaped Diana's grasp and ran up to Kimberly stopping a foot in front of her. Diana called after Buster and said to Kimberly, "He's a nice dog. He won't bite." Kimberly began to reach out the palm of her hand to Buster when Buster jumped up and bit down on her left arm. Kimberly freed herself and turned in a panic to run but slipped and fell face down in the Hardsaws' yard. Buster proceeded to bite Kimberly repeatedly on the inside and back of her thighs. Members of Kimberly's family heard the commotion and came to her aid.

The Courtneys filed their complaint against the Hardsaws on March 19, 1993, and amended the complaint on March 7, 1995. The Courtneys alleged that the Hardsaws carelessly and negligently entrusted their minor daughter with the care, custody and control of their premises, including the care of Buster. Following trial, the jury returned its verdict in favor of the Courtneys. The jury concluded that Kimberly Courtney was 30% at fault for her injuries, and awarded the Courtneys $28,824.01 in compensatory damages. The Hardsaws appeal.

### Issue One: Sufficiency of the Evidence

The Hardsaws contend the evidence is insufficient to support the verdict and judgment in this case. We disagree.

■ When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Bob Schwartz Ford, Inc. v. Dunham*, 631 N.E.2d 953, 955 (Ind.Ct.App.

1994). We consider only the evidence and reasonable inferences therefrom which support the jury's verdict. *Id.* In a civil case in which the jury returns its verdict for the plaintiff and the trial court enters judgment on that verdict, reversal is proper only where there is no evidence or reasonable inference from that evidence on an essential element of the plaintiff's case. *Board of Comm'rs of Adams County v. Price*, 587 N.E.2d 1326, 1332 (Ind.Ct.App. 1992), *trans. denied.*

■ Unlike most cases involving dog bites, the Courtneys' claim is not based upon a pure negligence theory or upon premises liability. The Courtneys' claim focuses on whether the Hardsaws were negligent in entrusting their twelve-year-old daughter, Diana, with the care, custody and control of the dog in their absence. To prove a claim of negligent entrustment, a plaintiff must prove: (1) an entrustment; (2) to an incapacitated person or one who is incapable of using due care; (3) with actual and specific knowledge that the person is incapacitated or incapable of using due care at the time of the entrustment; (4) proximate cause; and, (5) damages. *Brewster v. Rankins*, 600 N.E.2d 154, 158–59 (Ind.Ct.App.1992). Although application of the doctrine of negligent entrustment was once limited to situations involving automobiles and firearms, application of the doctrine no longer depends solely upon the instrumentality involved. *See id.* at 159. The theory of negligent entrustment does not hinge on the nature of the instrumentality but on the supplying of the instrumentality for probable negligent use. *Id.* The Hardsaws assert that there was insufficient evidence of the first three elements of negligent entrustment.

■ With regard to the first element, we conclude that the Courtneys have established an entrustment of Buster's care to Diana. While the Hardsaws argue that there is no evidence that they specifically entrusted the dog to the twelve-year-old, Diana was left home alone with the dog chained on the premises. Diana herself recognized that she was responsible for the dog's well-being when she immediately went to its aid. A

domestic pet is not a wholly self-sufficient animal and requires human care and supervision under many circumstances. The evidence indicates that on at least two prior occasions, Buster had broken free from his chain. It was reasonably foreseeable that Diana would have to exercise some form of care or control of the dog during the course of the day.

We next consider whether the evidence supports the conclusion that Diana was incapable of using due care in supervising and controlling the dog. The standard of care expected of a child is measured by that degree of care which would ordinarily be exercised by a child of like age, knowledge, judgment and experience under like conditions and circumstances. *Moore v. Rose–Hulman Inst. of Technology,* 165 Ind.App. 165, 170, 331 N.E.2d 462, 464 (1975). There is no evidence to indicate that Diana was instructed by her parents on how to care for and control Buster. The Hardsaws admit that Diana had a complete lack of prior experience in supervising the dog. There was additional testimony to indicate that Buster and twelve-year-old Diana were approximately the same physical size. There is sufficient evidence to support the jury's conclusion that Diana was incapable of exercising due care in her custody and control of Buster.

Further, the jury could have reasonably inferred that the Hardsaws had actual and specific knowledge that due to her young age and lack of experience, Diana was incapable of using due care at the time they entrusted her with the dog. In recognition of Diana's young age, the Hardsaws gave Diana specific instructions to stay in the house while they were gone and to telephone them if she had any problems. As we have noted above, Diana had no prior experience in supervising Buster and, on the day in question, the Hardsaws did not instruct Diana on how to care for or control the dog in their absence. That evidence coupled with evidence that Diana was comparable in size to the dog was sufficient to support a reasonable inference that the Hardsaws had actual knowledge that she would be unable to control the dog adequately.

Still, the Hardsaws maintain that they had no reason to know that Buster represented a risk of harm to others and, thus, that they were not negligent in entrusting the dog to Diana. Indiana common law provides that all dogs regardless of breed or size are presumed to be harmless domestic animals. *Royer v. Pryor,* 427 N.E.2d 1112, 1117 (Ind.Ct.App.1981). That presumption is overcome by evidence of a known or dangerous propensity as shown by the specific acts of the particular animal. *Ross v. Lowe,* 619 N.E.2d 911, 914 (Ind.1993). A dangerous propensity is a tendency of an animal to do any act which might endanger the safety of persons or property in a given situation. *Id.* When the animal's owner or keeper has such knowledge, he is obligated to use reasonable care to prevent the animal from causing injury. *Id.*

Nonetheless, the owner of a dog is bound to know the natural propensities of dogs, and if those propensities are of the kind which reasonably might be expected to cause injury, the owner must use reasonable care to prevent such injuries from occurring. *Alfano v. Stutsman,* 471 N.E.2d 1143, 1145 (Ind.Ct.App.1984). Indeed, an owner is bound to know that a dog might become excited or confused under certain circumstances and must use reasonable care to prevent a mishap. *See id.* (citing *McAbee v. Daniel,* 60 Tenn.App. 239, 445 S.W.2d 917 (1968)).

Thus, even if the owner is unaware of any specific vicious propensity, the duty owed is the same: that of reasonable care under the circumstances. *Ross,* 619 N.E.2d at 914; *see Vetor by Weesner v. Vetor,* 634 N.E.2d 513, 516 (Ind.Ct.App.1994). Reasonable care requires that the care employed and precautions used be commensurate with the danger involved under the circumstances of a particular case. *Ross,* 619 N.E.2d at 914. The necessary precautions to be observed or foresight to be exercised are usually questions to be resolved by the jury. *Id.* Any given method of restraining a dog may or may not be adequate under the particular facts of a particular case. *Id.* at 915.

The Hardsaws essentially urge us to conclude, as a matter of law, that absent evidence of prior viciousness, they could not have been negligent in entrusting Buster to their daughter and, thus, that this case should not have been submitted to the jury. We agree with the Hardsaws that aside from occasional barking and growling, there was no evidence that Buster had exhibited viciousness in the past. Nevertheless, we conclude that even absent a known vicious propensity, a dog is an instrumentality which may become a source of danger to others when entrusted to a young child who lacks age, judgment, and experience. *Cf. Ross,* 619 N.E.2d at 915 (considering imputed negligence). Whether an owner's entrustment of the control and restraint of a dog to a child was reasonable under the circumstances is a question for the jury.

Although restrained in the yard by a chain, Buster was left under the care and supervision of a twelve-year-old child who had no previous experience supervising him. Before Diana came to Buster's aid to untangle him, Buster was in severe distress, yelping and foaming at the mouth. A child with no prior experience in supervising a dog is not likely to foresee or comprehend that a dog may become dangerous when in pain and distress. As a result of Diana's inability to use due care and to recognize that propensity, Diana unchained the dog, failed to keep a firm grasp on him, and allowed the distressed animal to attack and severely injure Kimberly.

As we noted in *Ross,* chaining a dog and even confining it behind a fence is not, as a matter of law, necessarily sufficient. *Id.* We emphasize here that Buster was not restrained in any way at the time of the attack but had escaped the hands of a child. Under the facts and circumstances of this case, it was reasonable for the jury to conclude that the Hardsaws' entrustment of Buster to Diana was a failure to exercise reasonable care in the manner of keeping and controlling their dog.

By our opinion today, we do not intend to imply that dog owners be held to a strict liability standard for injuries caused by their pets, nor to imply that it is negligent entrustment per se for an owner to entrust a domestic pet to a twelve-year-old child. However, animals are not necessarily entitled to one free bite before their owners may be held liable in negligence, and parents must exercise reasonable care in entrusting their children with the supervision of family pets. The resolution of these issues is fact sensitive and must be resolved by the trier-of-fact on a case-by-case basis. We will not second-guess the verdict.

### Issue Two: Jury Instruction

The Hardsaws also contend that the trial court erred when it read to the jury Plaintiff's Final Instruction Number One as modified and, thus, that they are entitled to a new trial. Again, we must disagree.

The giving of jury instructions is the duty of the trial court, and the trial court's decision will not be reversed absent an abuse of discretion. *Morris v. K–Mart, Inc.,* 621 N.E.2d 1147, 1148 (Ind.Ct.App. 1993), *trans. denied.* It is the trial court's duty to instruct the jury so that it can fairly understand the law as it should be applied to the facts of the case. *Miller Brewing Co. v. Best Beers of Bloomington, Inc.,* 608 N.E.2d 975, 980 (Ind.1993). The substance of a jury instruction must be supported by the evidence and must be a correct statement of the law. *Wielgus v. Lopez,* 525 N.E.2d 1272, 1274 (Ind.Ct.App.1988).

The trial court read to the jury a modified version of plaintiff's tendered final instruction number one which provided in relevant part:

You are instructed that a dog which through sudden pain or fright involuntarily snaps for its own protection is not necessarily vicious nor does it necessarily have vicious propensities.

You are further instructed that on the other hand that a dog which may, through sudden pain or fright, involuntarily snap and having done so proceeds to savage its victim is demonstrating a vicious propensity.

Record at 545. Defense counsel objected to the instruction and asserted that the instruction was misleading and an incorrect state-

ment of the law as applied to the facts of this case. Specifically, counsel argued that the correct inquiry was what was known by the Hardsaws "at the time" of the incident and that Buster's act of attacking and biting Kimberly was not sufficient to demonstrate a vicious propensity or that the Hardsaws' had knowledge of any such propensity.

The Hardsaws are correct that the language of the instruction comes essentially verbatim from our opinion in *Keane v. Schroeder*, 148 Ind.App. 131, 139, 264 N.E.2d 95, 99 (1970) in which we reversed a trial court's entry of a directed verdict in favor of the dog-owner/defendant. The Hardsaws argue that it was error for the trial court here to use language from *Keane* in its jury instruction on vicious propensity because *Keane* is factually distinguishable from the instant case. The Hardsaws are correct that unlike the instant case, there was evidence that the dog-owner in *Keane* had knowledge that the dog had bitten someone prior to the incident in question. However, the court in *Keane* did not rely on the dog's prior act in its general statement regarding vicious propensity. The language taken from *Keane* merely stands for the proposition that a dog which, through sudden pain or fright, involuntarily snaps and then proceeds to savage its victim is demonstrating a vicious propensity. The application of such language is not limited to situations where the owner has knowledge that the dog has bitten someone on a prior occasion. Thus, despite the factual distinctions between *Keane* and the present case, we cannot say that the language used in the instruction was contrary to law as applied to this case.

The fact that a dog has never bitten anyone before is not dispositive in a jury's consideration of vicious propensity. *See Layman v. Atwood*, 175 Ind.App. 176, 179, 370 N.E.2d 933, 935 (1977). In *Layman*, we stated that a jury could reasonably infer that the very act of unprovoked biting of the plaintiff was evidence of that animal's vicious propensity. *Id.* We further found that if an animal does have such vicious tendencies, a jury could reasonably infer that the animal's owners knew or should have known of those tendencies. *Id.*

Therefore, we cannot agree with the Hardsaws that the jury's consideration of vicious propensity here should have been limited only to the dog's prior acts. The jury instruction was supported by the evidence and not contrary to the law. Further, upon review of the jury charge as a whole, we conclude that the jury was adequately instructed on all aspects of vicious propensity and on each party's theory of the case which resulted in a 30/70% comparative fault allocation. We find no error.

Affirmed.

ROBERTSON, J., concurs.

CHEZEM, J., concurs in result with separate opinion.

CHEZEM, Judge, concurring in result.

Under our common law, all dogs, regardless of breed or size, are presumed to be harmless, domestic animals. *Alfano v. Stutsman*, 471 N.E.2d 1143, 1145 (Ind.Ct.App. 1984). This presumption may be overcome by evidence of a known or dangerous propensity as shown by specific acts of the particular animal. *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind.1993). Unlike the panel in *Layman v. Atwood*, 370 N.E.2d 933 (Ind.Ct.App.1977), I do not believe that a jury could reasonably infer that an "affectionate" dog (who previously "had never bitten or harmed anyone in any way") is vicious from the fact of the unprovoked biting at issue in a case. Likewise, I do not believe that, after making such a leap, a jury could then reasonably infer that the owner should have known of this previously undisclosed vicious propensity. In the present case, no evidence was produced that Buster had ever committed any specific prior acts which would indicate to his owners that he had a dangerous propensity.

Absent such evidence of a specific dangerous propensity, the Hardsaws were "bound to know the natural propensities of the particular class of animals to which [Buster] belongs." *See Alfano*, 471 N.E.2d at 1145. If these propensities are the kind which might be reasonably expected to cause injury, the owner must use reasonable care to prevent the injuries from occurring. *Id.* As applied here, the issue is two-fold: (1) wheth-

er the Hardsaws were bound to know that a dog like Buster could become tangled in and choked by his chain, which in turn would make him excited enough that they should reasonably have expected him to attack someone when released, and (2) whether the Hardsaws exercised reasonable care to prevent such an attack.

As for the first prong, I see no problem foreseeing that a dog could become entangled in its chain. Yet, I am not convinced that the owner of a dog who has never before displayed any aggressive tendencies should be bound to know that such a dog would attack when freed from this type of predicament. However, I feel constrained to defer to the fact-finder's opinion on that issue. As for the second prong, I disagree with the conclusion that the Hardsaws did not exercise reasonable care when they left Buster with their daughter. While the Hardsaws did leave Buster out while their twelve-year old daughter was inside, there was no indication that she did not possess at least average intelligence and capabilities. I think that even the most intelligent and capable adult would have responded by taking the same immediate measures when faced with what otherwise would result in the almost certain death of a family pet. I do not think releasing the dog was unreasonable. Perhaps, the negligence, if any, was in the original chaining of Buster to a tree without providing constant supervision. Without knowing what act the jury considered negligence, I am compelled to defer to the fact-finder.

For all of the aforementioned reasons, I concur in result.