**FONTENOT v. FREUDENSTEIN et al.**

No. 17429.

Court of Appeal of Louisiana. Orleans.

Jan. 27, 1941.

Clem H. Sehrt and Harry T. Wilkins, both of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling, of New Orleans, for appellees.

JANVIER, Judge.

Leo Fontenot, twelve years of age, sustained severe and painful personal injuries at about 8:30 o'clock on the morning of November 5, 1938, when, as a pedestrian crossing Dryades Street just below the corner of Jackson Avenue, he came into contact with an automobile driven by Miss Rita Freudenstein, the minor daughter of Sidney Freudenstein. The boy had left the lake side sidewalk of Dryades Street at a point about 100 feet below Jackson Avenue and was proceeding to the opposite, or river side sidewalk, to join his brother, who was on that sidewalk about 38 or 40 feet below Jackson Avenue. The automobile driven by Miss Freudenstein had crossed Jackson Avenue on its way to the downtown section of New Orleans, so that, as the boy and the automobile converged, the boy was walking in a diagonal direction, slightly towards the automobile and approaching it from its left side. He struck the left side of the car at the handle of the front door, which is directly alongside of, or possibly a few inches behind, the driver, and is about half-way between the front and the rear of the automobile.

On his behalf his father, Albert Fontenot, brings this suit, alleging that Sidney Freudenstein and Miss Freudenstein are solidarily liable. For the use and benefit of his said minor son, he seeks judgment in the sum of $25,000.

In a supplemental petition, plaintiff alleges that Consolidated Underwriters Insurance Company or Association issued a policy of liability insurance protecting the driver of the automobile involved, and, taking advantage of the right created by Act 55 of 1930, he prays for judgment against

the said insurer solidarily with the other defendants.

Defendants deny that there was any negligence in Miss Freudenstein and aver that the accident resulted solely from negligence of Fontenot himself "in recklessly running across Dryades Street in the middle of the block at a place where he, as a pedestrian, had no legal right to be", and defendants also charge that the said boy ran across the street "without paying any attention whatsoever for his own safety, without using his sense of sight or hearing, without looking or listening for any approaching vehicles, without seeing the automobile driven by Rita Freudenstein", and defendants especially charge that the action of young Fontenot, in attempting to cross the street at that point, was "in violation of the provisions of the general traffic ordinance of the City of New Orleans, No. 13,702 of the Commission Council Series", and in the alternative they also aver that, if there was any negligence in Miss Freudenstein, the proximate cause of the accident was the contributory negligence of Fontenot as above set forth.

There was judgment dismissing the suit, and plaintiff has appealed.

The record shows that, as Miss Freudenstein came down Dryades Street, she saw to her left, on Jackson Avenue, a street car headed towards the Mississippi River, just preparing to turn to its left on its route down Dryades Street. Miss Freudenstein reduced the speed of the automobile for two reasons—not only because there was a traffic sign requiring a slow speed of any automobile about to cross Jackson Avenue, but also because, thinking that she could not pass in front of the street car, she intended to permit it to turn into Dryades Street "ahead of her and to follow it down Dryades Street".

The motorman of the street car, however, with his hand, signalled to her to proceed ahead of the car, and she did this, driving her automobile across Jackson Avenue and down Dryades Street until it had reached a point some 30 or 40 feet below the corner, at which point the accident occurred.

Miss Freudenstein did not see Fontenot as he proceeded from the curb at her left on his course across the street, and, in fact, did not know that there had been an accident until she had driven her car an additional distance variously estimated at from 30 to 200 feet beyond the point of impact. As the boy struck her car on its left side, she heard a noise which she believed had been caused by something thrown against the car. After she had gone a short distance beyond the point at which she heard this noise, she looked into her rear view mirror and then, for the first time, saw the boy lying in the street behind the car. Nor had the boy seen her car until he was about four feet from it. He states, however, that when he first saw it, it was "zigzagging" and that, although he jumped back, he could not avoid being struck by the handle of the left front door.

All agree that the automobile was on the street car track nearest the river side of the street and it follows that the point at which the impact took place was about 20 or 25 feet from the sidewalk from which Fontenot had stepped into the street. Since it is conceded by all, that he was proceeding diagonally across the street, it appears certain that he had traversed a distance of about 30 or 35 feet after leaving the sidewalk and before he struck the automobile. His diagonal course was slightly in the direction from which the automobile was coming, and yet he did not see that car, nor did its driver see him.

It is very obvious that he did step into the side of the car because, certainly, the car could not move sideways. Yet he says that just before the impact he suddenly stepped backwards.

All parties concede, also, that the presence of the street car was not a factor in the misfortune; that it had not proceeded sufficiently far on its course around the corner to obstruct the view which either had of the other. In other words, either could have seen the other had either looked. Miss Freudenstein did not sound her horn. Her speed was not excessive.

Fontenot, in attempting to cross at that point, was obviously negligent in that he did so in violation of the plain provisions of a city ordinance, for Article IV of section 4 of Ordinance No. 13,702 C.C.S., reads as follows:

"4. Jay Walking Prohibited.

"Pedestrians shall cross streets only at street intersections or crosswalks and shall not cross street or cross walk intersections diagonally."

Of course, he was also negligent in that he failed to see the approaching vehicle. He was twelve years of age and there is nothing to show that he was not of suffi-

cient intelligence to render it proper to say that, as a matter of law, he could be guilty of contributory negligence.

It is also charged by defendants that he was running across the street and that this, too, evidenced carelessness on his part. Whether he ran is a disputed question of fact, and the judge a quo has resolved that he did, though there is practically no evidence to support this finding. No one testified that he ran. The only evidence on the subject is his own statement: "I knew I could beat the street car". And this was followed by the statement "I was walking".

We think that the case is one which squarely presents the problem of how far the courts should go in extending the doctrine known as that of "discovered peril", and, so far as we have been able to ascertain, first recognized by our Supreme Court in Rottman v. Beverly, 183 La. 947, 165 So. 153, 156. For many years it was the established jurisprudence here that, where the negligence of an injured plaintiff in failing to look for an approaching vehicle continued to the moment of the accident, there was no room for the application of the doctrine of the last clear chance. Then, in Rottman v. Beverly, supra, our Supreme Court, following a doctrine which had been recognized elsewhere, held that this rule—that there is no room for the application of the doctrine of the last clear chance where the negligence of the plaintiff continues to the moment of the accident—must itself yield where the defendant, discovering the peril of the negligent plaintiff, does not do all that is reasonably possible to avoid striking him. In that case the defendant actually "discovered" the plaintiff and should have noticed that the said plaintiff was oblivious of the fact that she was in danger. There the Supreme Court said: " * * * if a plaintiff negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, * * *".

We interpreted this as evidencing the view that this later doctrine (of discovered peril) should only be applied where the negligent defendant actually "discovers" the peril of the negligent plaintiff and fails to avoid striking him, and that the doctrine should not be applied where, because of the negligence of both, neither discovers the presence of the other. And the name which has been applied to this doctrine— "discovered peril"—would seem to indicate that it is inapplicable where there is no actual discovery of the peril of the subsequently injured person.

In Davidson v. American Drug Stores, Inc., La.App., 175 So. 157, there were presented facts showing that a pedestrian was injured because of the negligence of himself and of a passing motorcyclist, each in failing to discover the other, and, in a "concurring" opinion, the majority of the members of this court, believing that the Supreme Court in the Rottman case, supra, had indicated that, where both are negligent each in failing to discover the other, there can be no recovery, stated our views, which we thought were in accord with the statements of the Supreme Court. We said that, where the negligent defendant fails to discover the negligent plaintiff, the plaintiff cannot recover. However, when the question was presented in Jackson v. Cook, 189 La. 860, 181 So. 195, 198, the Supreme Court interpreted its decision in Rottman v. Beverly, supra, saying that it had not held and had not intended to hold that, where a plaintiff negligently fails to notice an approaching automobile and is injured, he may nevertheless recover even if the motorist did not discover him, provided it appears that the motorist could have seen the plaintiff had he looked and could have avoided striking him had he seen him. In that case the court said: " * * * The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this case did not see plaintiff does not absolve the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he was not looking. The Rottman Case is not authority for holding that, merely because the driver of the car in this case did not actually see the plaintiff, the defendant is not liable."

So that we must, of necessity, accept and apply the doctrine that where a motorist, had he looked, could have seen and appreciated the peril in which a negligent plaintiff placed himself, the motorist is liable if, because of his failure to look, he has not ascertained that the plaintiff is in peril.

This doctrine should not be called the doctrine of "discovered peril" because, as the Supreme Court has held, whether

there has been an actual "discovery" of the peril of the plaintiff is of no importance. It should more properly be called the doctrine of "apparent peril" since its result is to hold the motorist liable not because he has failed to avoid striking a plaintiff whose peril has been "discovered", but because he has failed to see and to appreciate a peril which would have been apparent had he looked.

■ But even the doctrine which has been established by those two cases (Rottman v. Beverly and Jackson v. Cook, supra) requires that there must be something about the appearance or actions of the plaintiff to indicate that he is in peril and does not realize it. In the Rottman case the court said that the defendant should have appreciated the fact that Mrs. Rottman did not realize her peril since her appearance so indicated: "* * * She neither looked nor listened before entering the highway, but proceeded to cross with her head down, paying not the slightest attention, and seemed to be utterly oblivious to danger."

In the Jackson case the Supreme Court said that, in its findings of fact, the Court of Appeal, 176 So. 622, had justifiably said that it could be inferred from the evidence that "plaintiff staggered from the shoulder of the road onto the pavement directly in front of the driver * * *". And, in Jones v. American Mutual Liability Insurance Company, 189 So. 169, 174, we said: "In other words, if there was nothing about the plaintiff's position or physical condition to indicate that he was in danger, it is immaterial whether the defendant saw him or not. The paramount inquiry must therefore always be—whether the defendant, if he had been maintaining a proper lookout and had seen the plaintiff, would have observed that the latter was in a position of peril."

In discussing the opinion of the Supreme Court rendered in Jackson v. Cook, supra, we said: "* * * But the opinion does not say (and it cannot be interpreted to mean) that, if a defendant could have seen a negligent plaintiff and did not observe him, the former will be liable to the latter where there was nothing unusual about the plaintiff's appearance at or near the roadway or where the plaintiff's movements were not such as to lead a reasonably prudent man to believe that he was in imminent danger."

In the case at bar there is nothing to show that there was anything about the appearance of Fontenot to indicate that he was in any peril. He must have been facing towards the approaching car as he was walking. Often, in crossing a street, a pedestrian, seeing a car approaching and about to pass in front of him, continues on his course until within a few feet of the path of the car and then stops to allow it to go by. Even had Miss Freudenstein been looking and even had she seen Fontenot, there is nothing to show that she should have realized that he was not aware of the approach of her car.

■■ Since plaintiff is under the necessity of alleging and proving all facts necessary to recovery, it follows that there can be no recovery here, for there is in the record no proof of the essential fact that Fontenot was obviously in peril as Miss Freudenstein approached.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.