NIEGOS, JR., BY NEXT FRIEND *v.* INDIANA HARBOR BELT RAILROAD COMPANY, ETC., AND NEW YORK CENTRAL RAILROAD COMPANY, ETC.

[No. 18,468. Filed January 8, 1954. Rehearing denied February 5, 1954. Transfer denied April 14, 1954.]

*Straley Thorpe* and *James Richards,* both of Hammond, and *Joseph Wasko* (of Counsel), of East Chicago, for appellant.

*Owen W. Crumpacker, Edmund A. Schroer* and *Crumpacker & Schroer,* of Hammond, and *Marvin A. Jersild,* of Chicago, Illinois, for appellees.

ROYSE, J.—Appellant brought this action against appellees for damages because of personal injuries received when he was run over by a train operated by appellees.

The facts as disclosed by the record may be summarized as follows: In the City of East Chicago there is a public park known as Koscioszko Park. Along the south boundary of said park appellees owned and operated two railroad tracks. These tracks, as they pass said park, are bounded on the south by a tract of two or three acres of waste land which is bounded on the south by the Calumet River. For many years prior to June 3, 1942, children of the neighborhood played in the park and frequently went across the tracks to the last mentioned tract and river. There were a number of paths in the park where the children crossed these tracks. In the southwest corner of the park there was a ball diamond. Appellant was a lad of ten years June 3, 1942. About five p. m. of said day he was playing ball with ten or twelve other children. He was playing in the outfield near some bushes at the south border of the park. A foul ball was knocked over the bushes toward the railroad tracks. In pursuit of the ball he ran under the bushes and along the north side of the railroad right of way parallel with the north tracks for a distance of about fifty feet. He saw the ball between the north tracks. At about the time he located the ball he saw a train about 250 feet away approaching from the east. He estimated the train was traveling at a speed of eight to ten miles per hour and that there were about twenty cars on it. At this time the ball was about four feet from him. He went onto the track, picked up the ball, and as he turned to leave the tracks he slipped and fell. His "belly and midsection struck the north rail" and knocked the wind out of him. He tried to get off the track and "almost did." The train ran over and cut off his left leg below the knee. At the time of the accident he had been familiar with these tracks for as long as he could remember. There was evidence the train could have been stopped within sixty

feet by an ordinary application of the brakes. There is no evidence appellees had actual knowledge children crossed the tracks along this park. The accident did not occur on or adjacent to any public or private crossing. There is no evidence the train did not have a lookout.

Appellant's complaint charged appellees with negligence in that they "failed to keep a sufficient and proper lookout for children crossing and upon said track and particularly this plaintiff." On the trial, at the conclusion of appellant's evidence, the trial court sustained appellees' motion to instruct the jury to find for them. Judgment that appellant take nothing and for costs against him.

The error assigned here is the overruling of appellant's motion for a new trial. This motion asserts the court erred in giving the peremptory instruction, and the verdict is not sustained by sufficient evidence and is contrary to law.

Appellant contends that under the facts herein it is the law that appellees were bound to anticipate the probable presence of children at the place where he was injured and owed a duty to keep a proper and sufficient lookout to avoid injury to him. He recognizes the general rule that "where there is no reason to anticipate the presence of persons — including children of all ages—no active lookout for persons, including children, is required of the railroads, unless so provided by statute." But he says the facts herein bring this case within the exception to the general rule referred to in 44 Am. Jur. 691, §460, where it is stated:

> "An express or implied license or invitation to persons to be on the tracks of a railroad company may arise where the public for a long time customarily, constantly, openly and notoriously crosses or travels along a railroad track at a place other than a public highway or highway crossing, with the knowledge and acquiescence of the company.

The duty of care in such a case includes keeping a lookout in order to discover the presence of such persons and to avoid injury to them."

He then asserts the fact he saw the train does not take him out of this exception, because he became disabled at a time when "had they been keeping an active lookout they could have easily avoided injury to him." In support of this contention he cites 75 C. J. S. 307 (notes 28-34) where it is stated:

"The railroad owes a duty of active lookout to children and others under disability on its tracks or right of way at places where and when it has reason to anticipate that such persons will be present, as in cities, towns, or populous communities, at a place where, and a time when, public use is to be anticipated, but not in rural communities, and it is liable for failure to perform such duty. It has been held that the duty under such circumstances is more urgent in the case of a child than in the case of an adult."

He contends the case of *Cleveland, etc. R. R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785, 108 N. E. 375 (transfer denied) is controlling in this case. In that case the fatal accident occurred on a switch leading to a flour mill owned and operated by appellee. Cars loaded with grain were moved daily to and from the mill. Cars were located and required to remain standing on said switch for long intervals of time. In the operation of unloading wheat, some leaked from the cars to the ground, around and under the cars and near and on said switch track. The switch was a short distance from a public park in a populous section of the City of Indianapolis. This park was frequented by large numbers of children who assembled there for play and amusement. Many of these children would go from the park, play and gather wheat

under, around and on the cars parked on this switch. This condition had existed for many years. Appellee had *actual* knowledge of this condition and had on occasions attempted to prevent such trespassing. On the day of the accident, appellee's five-year-old son had gone to the park with his twelve-year-old brother. They went to the tracks of appellee. The five-year-old boy was standing on the switch between two cars when the appellee, without any warning or signal, pushed six cars on to the switch and into other cars standing thereon. The boy was crushed and killed. In that case Judge Hottel, speaking for this court, made an exhaustive and erudite review of the cases from many jurisdictions in actions of this kind. The opinion points out that much of the confusion arising from these decisions was caused by an effort to bring the cases within the "last clear chance" rule or the doctrine of "attractive nuisance." We then held the true and ultimate test of actionable negligence in each case should be: "Did the owner of the premises under the particular circumstances of the case involved owe *any duty* to the party injured on his premises and, if so, was such duty violated and, did such violation result in the injury complained of?" We affirmed the judgment of the trial court by applying the maxim "So use your own as not to injure another's property." However, the following statement from pp. 407, 408 of that case is significant in considering the question presented here:

"It does not follow from what we have said that a railroad company is an insurer of the safety of children who come on its premises, either as licensees or trespassers, or that it at all times and at all places owes them the duty of any care. Its obligation is simply that which should attach and under the law 'attaches to every member of society when he undertakes to exercise a personal right in a manner which may affect the welfare or safety

of another member, the obligation of reasonable care . . . (and this) may, at times, seem to be a burden, but its enforced observance is never a wrong, whether applied to railroad companies or to individuals.' *Edgington* v. *Burlington, etc. R. Co., supra,* 422, 446. Reasonable care in such cases does not impose any duty where the presence of a child on its tracks is merely possible or where such duty or care imposes on the company an *unreasonable limitation on the usual and ordinary use of its property.* A correct and pertinent statement affecting this phase of the question will be found in the case of *Chicago, etc. R. Co.* v. *Krayenbuhl* (1902), 65 Neb. 889, 902, 904, 91 N. W. 880, 881, 883, 59 L. R. A. 920, where it is said: 'It is true, as said in *Loomis* v. *Terry* (1837), 17 Wend. (N. Y.), 496, 500, 31 Am. Dec. 306, 'the business of life must go forward'; the means by which it is carried forward cannot be rendered absolutely safe. Ordinarily, it can be best carried forward by the unrestricted use of private property by the owner; therefore the law favors such use to the fullest extent consistent with the main purpose for which, from a social standpoint, such business is carried forward, namely, the public good. Hence, in order to determine the extent to which such use may be enjoyed, its bearing on such main purpose must be taken into account, and a balance struck between its advantages and disadvantages. If, on the whole, such use defeats rather than promotes the main purpose, it should not be permitted; on the other hand, if the restrictions proposed would so operate, they should not be imposed. . . . Hence, in all cases of this kind, in the determination of the question of negligence, regard must be had to the character and location of the premises, the purpose for which they are used, the probability of injury therefrom, the precautions necessary to prevent such injury, and the relations such precautions bear to the beneficial use of the premises.' " (Our emphasis)

Some of the statements in that case in reference to the many cases referred to therein have led to some mis-

understanding of the question this court there determined.

In the case of *Holstine* v. *Director General of Railroads* (1922), 77 Ind. App. 582, 134 N. E. 303, this court affirmed the action of the trial court in sustaining a demurrer to appellant's complaint. The averments of the complaint were summarized in the opinion as follows:

". . . that on June 25, 1919 and for three months prior thereto there was a pile of sawdust along the edge of appellee's right of way, a part of which was on said right of way and part on the lands of other persons; that no fence guard or barrier was maintained between appellee's track and said pile of sawdust, which was about thirty feet from appellee's main line and which was in a clear and unobstructed view of the railroad a half mile to the east thereof; that from day to day for two months prior to said day numerous children of tender age had been and were accustomed to and did congregate, play and amuse themselves about said sawdust and upon and along appellee's right of way and tracks adjacent thereto; that said habit of said children was well known to appellee and its servants who operated trains over said tracks during all of said time; that by reason of said facts and said knowledge and because of the danger of such children being run over by appellee's trains it became and was the duty of appellee in operating its trains at said point to keep a careful lookout so as to discover the presence of children of tender years who might wander or go upon its tracks and to avoid running its trains over them; that on June 25, 1919, appellant's son, then nineteen months old, was playing on and about said pile of sawdust and while so engaged wandered upon appellee's track adjacent thereto, and while he was standing upon said track defendant ran one of its passenger trains over its said track at a speed of sixty miles an hour; that appellee's servants in charge of said train negligently failed to exercise ordinary care to see and discover the

perilous situation of said child; that by the exercise of ordinary care the servants in charge of said train could have seen and appreciated the perilous situation of said child in time to have gotten said train under control and have stopped the same before it reached said child but that said servants negligently failed to keep a lookout for said child or any children and negligently caused said train to run over and instantly kill it; that said child was *non sui juris* and did not know or appreciate the perilous position it was in; that the death of said child was the direct and proximate result of the negligence of appellee and its servants in charge of said train, in failing to keep a careful lookout for children on its track at that place and in failing to have said train under control, after appellee knew that the presence of children of immature judgment might be anticipated to be about said pile of sawdust and its right of way; that if appellee's employes in charge of said train had kept a careful lookout and had used ordinary care to see and discover the presence of children on its tracks, they could have stopped the train in time to have avoided running over said child."

In that case this court said:

"The facts as they are alleged in this case are not to be compared with the facts in the Means case, *supra,* where the employees of the railroad were engaged in placing freight cars *on a switch and not in the operation of a regular passenger train over the main line of the road,* a train which was required to maintain a high speed in order to make its scheduled running time." (Our emphasis).

It was further pointed out the appellants sought damages for the death of their 19-months-old child and that appellee therein had the right, in the absence of any notice or knowledge to the contrary, to assume that the parents of immature children playing around and upon the pile of sawdust were not permitting such children to go into a place of danger unattended, etc.

In the case of *Dickerson* v. *Ewin et al.* (1938), 105 Ind. App. 694, 17 N. E. 2d 496, the appellant, a twelve-year-old boy, had his foot caught in a coupling of a freight train he had boarded adjacent to Willard Park in Evansville, Indiana. At the conclusion of plaintiff's evidence the trial court directed the jury to return a verdict for defendant. On appeal the appellant there, as here, relied on the Means case, *supra*. This court, in affirming the action of the trial court, said:

> "The facts of that case (Means) are materially different from the facts of the instant case. The injured party in that case was clearly *non sui juris;* in this case the injured party, insofar as the evidence shows, was clearly *sui juris*. The circumstances under which the injury occurred in that case are materially different from the situation in this case."

The case of *McClelland* v. *Baltimore & O. C. T. R. Co.* (C. C. A. 7th Cir.) (1941), 123 F. 2d 734, involved the loss of a leg by a boy 11½ years old, in the switch yard of appellant. There was evidence children and adults had used this yard as a crosswalk, etc.; that children frequently climbed under cars on the tracks. Appellee recovered a judgment for $11,000.00. On appeal he contended that under the rule announced in the Means case, *supra,* the judgment should be affirmed. In rejecting this contention, the Circuit Court of Appeals, speaking through Judge Sparks, quoted from that case portions which we have set out above. He then referred to the rule stated in the Means case (set out above) as to the true and ultimate test of actionable negligence in each case. The court then said:

> "Whether such a duty existed in this, or in any case, is a question of law for the court, while the

question whether such duty was properly performed is a question of fact for the jury."

In this case appellant had the burden of proving by a fair preponderance of the evidence that the appellee was guilty of the negligence charged in his complaint and that such negligence was the proximate cause of his injuries. In reaching our decision we have meticulously adhered to the rule that where we are considering the action of the trial court in directing a verdict for the defendant we must consider only the evidence and the reasonable inferences arising therefrom most favorable to the appellant.

Appellant was charged with the duty of using the care that a child of like age, knowledge, judgment and experience would ordinarily exercise under like conditions and circumstances. *Indianapolis Railways, Incorporated* v. *Williams* (1945), 115 Ind. App. 383, 59 N. E. 2d 586; *Town of Argos* v. *Harley et al.* (1944), 114 Ind. App. 290, 304, 49 N. E. 2d 552 (Transfer denied) ; *Bottorff* v. *The South Construction Company* (1916), 184 Ind. 221, 227, 110 N. E. 977. At the time of the accident he was ten years old and had played around this park for five or six years. He had lived all of his life in the immediate vicinity. At the trial nearly ten years after the accident he said that on the date of his injury he was able to judge the speed of the train. He said it was approaching him at a speed of eight to ten miles per hour. Significantly this is the only evidence in the record as to the speed of the train. This was before he went on the track and the train at that time was about 250 feet in front of him. If the train was traveling at a speed of nine miles per hour it would move 792 feet in one minute and in less than a half minute would have been past the point where he observed the train before he went on to the track.

Under these circumstances even if there were evidence that the train crew saw appellant on its right of way and thereby had actual knowledge of his presence, can it be said that in the exercise of ordinary care it became appellees' duty to stop the train because it was possible he would dart onto the track in front of the plainly visible approaching train? That is appellant's contention here. Such contention cannot be sustained in reason or by the authorities quoted herein.

Finally, there is no evidence in the record that the employees of appellees knew that appellant had slipped and fallen on its tracks and was in a position of peril. It is well settled in this state, and in most others, that before the last clear chance rule may be applied the defendant must have actual knowledge of plaintiff's danger. *Southern Railway Company et al.* v. *Wahl* (1925), 196 Ind. 581, 589, 149 N. E. 72; *Lutton* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Company*, 73 Ind. App. 437, 127 N. E. 781; *Snyder* v. *New York Central Railroad Company* (1936), 101 Ind. App. 258, 194 N. E. 796 (transfer denied).

On the record herein appellant has failed to show that his injuries were proximately caused by reason of the violation of any duty owed to him by appellees. Therefore, the judgment is affirmed.

Crumpacker, C. J. and Kelley, J.—Not participating.

NOTE.—Reported in 116 N. E. 2d 550.