**Dale F. SMITH, Appellant (Plaintiff Below),**

v.

**Aubrey A. DIAMOND, Appellee (Defendant Below).**

No. 2–980A305.

Court of Appeals of Indiana, Fourth District.

June 24, 1981.

William E. Beck, II, Martin & Beck, Kokomo, for appellant (plaintiff below).

Eugene O. Maley, Dennis N. Owens, Smith, Maley & Douglas, Indianapolis, for appellee (defendant below).

MILLER, Judge.

Plaintiff Dale Smith, a 12-year-old boy who was struck and injured while crossing a street by a car driven by defendant-appellee Aubrey Diamond, appeals from a judgment on the evidence in favor of Diamond. We affirm in light of uncontradicted testimony establishing that Smith, who failed to look both ways for traffic before crossing the street, was contributorily negligent as a matter of law.

The facts most favorable to Smith are as follows: In April of 1979, about 5:30 p. m., Smith, who was 12 years and 9 months old and a student in the seventh grade, was walking from his home in the Modern Mobile Trailer Court to the "Gas Barn" across the street to buy milk for his family at his father's request. The trailer court was on the east side of North Washington Street apparently near the Kokomo city limits, and the "Gas Barn" was on the west side and to the south of the trailer court, about 400 to 500 yards away. At some point prior to leaving the premises of the trailer court, Smith met John Crane, Jr., an 11-year-old friend. The boys walked together out of the southernmost exit of the trailer court and proceeded south on North Washington. Although there was a gravel berm on either side of the street, there were no sidewalks, crosswalks, stop signs or stoplights near the accident scene. The road at that point narrows from four lanes south of the "Gas Barn" to two lanes, and there is a slight curve. When the boys reached the area of the entrance to the Riley Estates Trailer Park, which is located directly south of the Modern Mobile Trailer Court, Smith crossed the street to the west side, where the "Gas Barn" was located, after first waiting for traffic to pass. He was then north of a "Welcome to Kokomo" sign on the west side of the street.

John Crane, Jr. testified he remained on the east side of North Washington. By contrast, however, a witness parked at the "Gas Barn," Russell McCoy, stated he saw both boys on the west side of North Washington. According to Crane, Jr., he first noticed Smith crossing the street when the latter was halfway across, and he did not follow because of traffic.

The accident occurred when Smith attempted to go from the west side of North Washington back to the east side so that he could cross with Crane, Jr. He stated, "I was just wanting to cross with him, so I just went back over." Smith testified he had walked only a short distance on the west side, until he was south of the "Welcome to Kokomo" sign, before attempting to go back over. At that time, he looked to his left and saw a car, waited for it to pass, and then proceeded across the street *without looking to his right* for northbound traffic. In fact, according to Smith, he had stepped over into the northbound lane before he saw Mrs. Diamond's car.

Smith was struck in the right, or northbound, lane of traffic by a 1970 stationwagon driven by Diamond. She testified without contradiction she was traveling about 35 miles per hour in a zone which changes from 35 to 50 miles per hour shortly before the point of impact. According to Mrs. Diamond, she first saw both boys when she was about a block away, at which time they were standing directly across from each other in the gravel berm on either side of North Washington, south of the "Welcome to Kokomo" sign. Mrs. Diamond stated she slowed to about 30 miles per hour by taking her foot off the accelerator when she saw the boys. Although she also stated Crane, Jr. looked in her direction and moved back

off the roadway three or four feet, Crane, Jr. himself testified "I looked to my left. I looked towards the Gas Barn and I didn't see no car." According to Mrs. Diamond, she resumed traveling at 35 miles per hour after the Crane boy moved off the roadway.

As Mrs. Diamond approached the boys' position her view of Smith was blocked by oncoming traffic in the southbound lane. She continued watching Crane, Jr. but did not sound her horn or give any other type of warning. Her next view of Smith was when she came "nose to nose" with the first of several approaching cars, at which time he appeared "on the center line" between two such vehicles about 200 feet apart, as he (Smith) was entering her lane of travel some five or six feet in front of her.[1] Diamond said "I believe I swerved to the right," and immediately applied her brakes, but was unable to avoid striking Smith, who was dragged under the stationwagon. A police officer who arrived at the scene shortly thereafter stated he found the Diamond vehicle sitting in "a sort of northeasterly direction" near the entrance to the Riley Estates trailer court. Photographs of the car revealed the impact was slightly toward the driver's side of the car, almost at the center of the vehicle's hood. The witness, McCoy, stated the Diamond car traveled about one and one-half to two car lengths after hitting Smith before coming to a complete stop.[2]

At the conclusion of all of the evidence, the trial court determined, pursuant to Ind. Rules of Procedure, Trial Rule 50, "the evidence considered most favorably to the Plaintiff fails to prove a prima facie case and is insufficient to support a verdict for the Plaintiff." The sole question presented by Smith for our review is whether the trial

---

1. The independent witness, Russell McCoy, stated, without specifying exactly what distance he was estimating, that when the child was at the centerline of the street, the Diamond vehicle was "probably eight or nine feet" away. It was unclear from his testimony whether he was describing the distance from the car to the boy or the distance separating him, McCoy, from Mrs. Diamond's auto.

2. McCoy also stated, in contrast to the other accounts, he had seen *both* boys travel from the west side of North Washington back to the east side where the trailer courts were located. According to McCoy, the first boy, Crane, ran across the street between two cars, and was followed by Smith about a minute and one-half to two minutes later. Whether or not both boys would have been visible in crossing the street to a northbound car depended, he said, on "how close they was behind them."

court acted erroneously in taking the case from the jury.

Trial Rule 50 provides, in part:

"Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict therein is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict."

This Court has held a judgment on the evidence for a defendant is proper only if the plaintiff fails to present evidence of probative value on one or more of the elements necessary to a recovery on the claim made, *Koroniotis v. La Porte Transit, Inc.* (1979) Ind.App., 397 N.E.2d 656, 659, *citing Walters v. Kellam & Foley*, (1977) 172 Ind. App. 207, 360 N.E.2d 199, and that a ruling on a motion for judgment on the evidence is limited to a consideration of the evidence and all reasonable inferences drawn therefrom most favorable to the party against whom the motion is made. *Koroniotis v. La Porte Transit, Inc., supra* at 659–60, *citing Mamula v. Ford Motor Company*, (1971) 150 Ind.App. 179, 275 N.E.2d 849.

In a negligence action, judgment on the evidence is appropriate where, based on undisputed facts, a plaintiff virtually admits his own negligence in bringing about the complained of injury, since in such a situation the plaintiff is contributorily negligent as a matter of law, although it may also appear there is some question regarding the defendant's alleged negligent acts. *Carroll v. Ely*, (1980) Ind.App., 398 N.E.2d 1364, *Koroniotis v. La Porte Transit, Inc., supra.* Contributory negligence is a complete defense, independent of any negligence of the defendant. *Carroll v. Ely, supra* at 1366, *citing Chamberlain v. Deaconess Hospital, Inc.*, (1975) 163 Ind.App. 324, 329, 324 N.E.2d 172, 176.

Accordingly, the essential question in the instant action is whether Smith, who acknowledged his failure to look for northbound traffic, was contributorily negligent in crossing the street. If he was, this Court need not consider whether there is an inference, as Smith now alleges, that Diamond was negligent in her failure to sound her horn or further reduce her speed to avoid a collision.

The law pertaining to contributory negligence of children and minors and the standard of care to be applied to them has been the subject of much critical commentary and numerous appellate opinions of this jurisdiction and others. *See generally* Annot., *Contributory Negligence of Children*, 77 A.L.R.2d 918 (1961) and cases cited therein; Note, *Contributory Negligence of Children in Indiana: Capacity and Standard of Care*, 34 Ind.L.J. 511 (1959); and Wilderman, *Presumptions Existing in Favor of the Infant in re: The Question of an Infant's Ability to be Guilty of Contributory Negligence*, 10 Ind.L.J. 427 (1935). While the courts have taken a variety of approaches in addressing the question, often with the result that clear guidelines have proved elusive,

"there appears to be no doubt that 'children' are accorded special status in applying the normal rules of contributory negligence, and that this special status is normally justified on the ground that they have less capacity for self-care than an adult, and accordingly it would be improper or inequitable to hold them to the same standard."

Annot., *Contributory Negligence of Children, supra* at 919 (1961).

Thus, most courts would probably agree, for example, there is an age at which no child can rationally be charged with any appreciable duty of self-care, and an age at the other end of the scale, at which minors will typically be held to an adult standard of care. *Id.* at 920. Frequently, the decisions in this area have discussed not only the standard of care to be applied to the acts of children, but also the threshold question of whether children or infants of a particular age have the *capacity* to be capable of negligence under any circumstances. As a result, three distinct issues often emerge: (1) the existence of any capacity for contributory negligence; (2) assuming

some capacity but not an adult capacity, the standard of care to be applied; and (3) whether the particular plaintiff's actual conduct measured up to the requisite standard. *Id.*

In jurisdictions adopting the so-called "Massachusetts rule," the first two issues have in effect been consolidated into one test, namely, "that a child, regardless of age, is held to the same standard of care which is ordinarily exercised under similar circumstances by children of the same age, intelligence, and experience." [3] Note, *Contributory Negligence of Children in Indiana: Capacity and Standard of Care, supra.*

In many other opinions, however, including ones appearing in this State, the rhetoric of rebuttable and conclusive "presumptions" has been brought to bear on the question of a child's capacity, although such language (at least where rebuttable presumptions are concerned) has often been of uncertain effect, varying from jurisdiction to jurisdiction. *See generally* Wilderman, *supra.* The "Illinois rule," described as only a "slight modification" of the Massachusetts rule, Note, *Contributory Negligence of Children in Indiana: Capacity and Standard of Care, supra* at 512, employs an analogy to the rule regarding a child's capacity to commit a crime to conclude (at least in theory) that a child under the age of seven cannot be guilty of contributory negligence, that one between the ages of seven and fourteen is rebuttably presumed incapable of negligence, and one over fourteen is generally held to the same standard of care as an adult. *Id.* at 512. *See also* Annot., *Contributory Negligence of Children,* 77 A.L.R.2d 918 (1961).

Commentators have concluded the cases in this State have not clearly followed either of these approaches. Note, *Contributory Negligence of Children in Indiana: Capacity and Standard of Care, supra;* Wilderman, *supra* at 434. Apparently consistent with the Illinois rule, our courts have held, for example, that an infant under the age of seven is conclusively presumed incapable of negligence, *Fuller v. Thrun,* (1941) 109 Ind.App. 407, 31 N.E.2d 670, and that a "normal" minor over the age of fourteen "must be charged as a matter of law with the consequences of his acts as an adult" where they constitute contributory negligence. *Brush v. Public Service Co. of Indiana,* (1939) 106 Ind.App. 554, 21 N.E.2d 83, 86.[4] In *Bottorff v. South Construction Co.,* (1916) 184 Ind. 221, 110 N.E. 977, our Supreme Court alluded to the Illinois rule in reaching its conclusion that a 14-year-old boy, absent specific averments of fact to the contrary, may be presumed to be responsible for his acts as an "intervening agency" when another youth, age 12, was injured by the defendant construction company's dynamite caps. In sustaining a demurrer by the company to the 12-year-old's complaint, the Court stated:

"This court has held that a boy thirteen years old is liable for his torts, when wilfully committed. *Peterson v. Haffner* (1877) 59 Ind. 130, 26 Am.Rep. 81. It has been laid down by law-writers and the courts that the time of infancy is divided into three distinct periods, during each of which different presumptions prevail as to their responsibility for crimes committed; the first period is that up to the age of seven years, during which the infant is conclusively presumed to be incapable of understanding the nature of crime and .

3. See in this regard Indiana Pattern Jury Instructions (Civil) 5.27, where it is stated "[A] child [ ] years of age is bound to exercise such care for his own safety as would ordinarily be exercised by a child of like age, knowledge, judgment and experience under the facts, circumstances and conditions disclosed by the evidence." It is stated in Indiana Pattern Jury Instructions (Civil) 5.25 that "[u]nder the law of this state, a child under seven years of age cannot be guilty of contributory negligence."

4. *Brush* and the similar case of *Kent v. Interstate Public Service Co.,* (1929) 97 Ind.App. 13, 168 N.E. 465 (also involving a 14-year-old) were subsequently overruled, however, "[t]o the extent that those opinions can be read to indicate the degree of care required of a fourteen year old boy to avoid being held to be contributorily negligent is the same degree of care required of an adult...." *Petroski v. Northern Public Service Co.,* (1976) 171 Ind.App. 14, 28, 354 N.E.2d 736, 746.

can in no way be held responsible therefor; the second is that between the ages of seven and fourteen years. An infant between these ages is presumed to be incapable of committing crimes, but the presumption may be rebutted by proof that the infant possessed sufficient discretion to be aware of the nature of the act. The third period is after the age of fourteen years when the infant is presumed to be capable of committing crime, and can be held therefor the same as an adult. 22 Cyc. 622, *et seq.*, and cases cited. It seems that the greater weight of authority is to the effect that the same rule applies in negligence cases. 29 Cyc. 539; 2 Modern Am. Law, p. 685, 686; *Kehler v. Schwenk* (1891), 144 Pa.[St.] 348 [22 A. 910], 13 L.R.A. 374, 27 Am.St. 633; *Coolbroth v. Pennsylvania R. Co.* (1904), 209 Pa.[St.] 433, 58 A[tl]. 808."

*Id.* at 227, 110 N.E. at 978.

It also appears, however, that cases subsequent to *Bottorff* have not strictly applied the Illinois rule, to the degree that children 14 and older have, in fact, been held to other than an adult standard by reason of their lessor mental abilities, *Harris v. Indiana General Service Co.*, (1933) 206 Ind. 351, 189 N.E. 410 (18-year-old), *Petroski v. Northern Public Service Co.*, (1976) 171 Ind.App. 14, 354 N.E.2d 736 (14-year-old), *and see Wise v. Southern Indiana Gas & Electric Co.*, (1941) 109 Ind.App. 681, 34 N.E.2d 975 (16-year-old), and it is the conclusion of various commentaries in the area that "[a]lthough the *Bottorff* case and subsequent cases bring the Illinois rule into Indiana concerning children over fourteen, no cases have been found in which the courts use presumptions in favor of a child between the ages of seven and fourteen." Note, *Contributory Negligence of Children in Indiana: Capacity and Standard of Care, supra* at 517 n. 37.[5]

Regardless of whether the Illinois or Massachusetts rule (if either) most accurately describes the decisions in this State, however, it is apparent, as various opinions have suggested, that where the facts are undisputed and warrant such a conclusion, a child such as the plaintiff in this action may be found contributorily negligent as a matter of law. As the Court stated, for example, in *Tabor v. Continental Baking Co.*, (1941) 110 Ind.App. 633, 643, 38 N.E.2d 257, 261, an action for personal injuries sustained by a nine-year-old girl whose sled collided with the defendant's parked truck,

"While the burden of establishing the plaintiff's contributory negligence is upon the defendant in a case of this sort, it would be proper for the court to direct a verdict for the defendant because of the contributory negligence of the plaintiff, if the evidence produced by the plaintiff had been such as to show contributory negligence of the plaintiff which proximately caused her injury, as a matter of law."

In *Tabor*, the Court concluded such contributory negligence on the part of the nine-year-old did not appear as a matter of law where the City of Bedford had restricted traffic to permit sledding in the area where the plaintiff was struck, and thus the trial court was not warranted in granting defendant's motion for a directed verdict at the conclusion of the plaintiff's case. *See generally Town of Argos v. Harley*, (1943) 114 Ind.App. 290, 49 N.E.2d 552, suggesting that although the facts in that case did not merit it, an eight-year-old may possibly be guilty of contributory negligence as a matter of law. Similarly, in *Plotzki v. Standard Oil Co. of Indiana*, (1950) 228 Ind. 518, 92 N.E.2d 632, an attractive nuisance case in which the majority found it unnecessary to directly address the issue of contributory negligence because no duty to an 11-year-

---

**5.** See also the Comment to Indiana Pattern Jury Instructions (Civil) 5.25 (1966) at 18, where it is stated:

"[d]espite the dicta in the *Bottorff* case, *supra*, to the effect that there is a presumption that an infant between the ages of seven and fourteen is incapable of negligent conduct, no

Indiana civil cases have been found that have applied the presumption. It would appear that the weight of authority in Indiana is that a child of over seven years is to be held to the same standard of care as would be exercised by a child of like age, knowledge and experience."

old was breached in light of the fact children are "early instructed" against the dangers of streams, lakes and pools of water, Judge Gilkison argued in a dissenting opinion that a demurrer to the complaint should not have been sustained, both because a duty was owed, and because contributory negligence on the part of the 11-year-old was not shown as a matter of law:

> "The complaint charges appellee with negligence. It may be assumed that by demurring to the complaint appellee is entitled to present any averments *contained in the complaint* indicating contributory negligence as a matter of law on the part of appellant's decedent or his mother that proximately contributed to the death complained of, as a reason why the demurrer should be sustained. *But such contributory negligence must affirmatively appear from the averments contained in the complaint, unaided by any presumptions of law or fact in favor of or against either party.*" (Emphasis in original.)

*Id.* at 536–37, 92 N.E.2d 636, 641 (Gilkison, J., dissenting).

A variety of jurisdictions have similarly suggested a child may be contributorily negligent as a matter of law, Annot., *Contributory Negligence of Children, supra,* citing *Government Employees Insurance Co. v. Davis,* (5th Cir. 1959) 266 F.2d 760 (Louisiana law); *Patterson v. Palley Manufacturing Co.,* (1948) 360 Pa. 259, 61 A.2d 861; *Rudes v. Gottschalk,* (1959) 159 Tex. 552, 324 S.W.2d 201, and many have so held.

**6.** In *Carroll,* the only indication of the victim's age was in an error alleged by his mother (the plaintiff) to the effect that the trial court acted improperly when it "excluded evidence of damages which she would have suffered after Steven reached the age of majority." *Id.* at 1364. The Court concluded:

> "When Steven ran across the roadway at a place where there was no crosswalk, he failed to yield the right-of-way to the Ely vehicle as required by law. *See,* IC 1971, 9–4–1–88(a) (Burns Code Ed.). Furthermore, when he ran across the road at night, having run out into the path of the oncoming Ely automobile from behind the only other vehicle upon the road, he clearly failed to exercise reasonable care for his own safety.

*Hardy v. Smith,* (1978) 61 Ill.App.3d 441, 19 Ill.Dec. 103, 378 N.E.2d 604 (13-year-old); *Couch v. Holland,* (Ky. 1964) 385 S.W.2d 204 (14-year-old); *Fontenot v. Freudenstein,* (La.App.1941) 199 So. 677 (12-year-old); *Berry v. Whitworth,* (1978) Tenn.App., 576 S.W.2d 351 (14-year-old); and *Duval v. Palmer,* (1943) 113 Vt. 389, 34 A.2d 317 (11-year-old). Indeed, this Court has recently held a minor (of unspecified age) may as matter of law be contributorily negligent, *Carroll v. Ely, supra.*[6]

The Appellate Court of Illinois, a jurisdiction adopting the rule of rebuttable and conclusive presumptions, has recently stated with respect to a 13-year-old who allegedly looked for and did not see an approaching vehicle which struck him:

> "Whether a minor aged 7 to 14 is contributorily negligent is also for the jury to determine taking into consideration the age, capacity, intelligence and experience of the child. (*Maskaliunas v. Chicago of Western Indiana R. R.* (1925), 318 Ill. 142, 149 N.E. 23; *Bertagnolli v. Ambler* (1973), 10 Ill.App.3d 983, 295 N.E.2d 279.) A child between the ages of 7 and 14 is presumed to be free of contributory negligence. (*McWethy v. Lee* (1971), 1 Ill.App.3d 80, 272 N.E.2d 663.) However, this rebuttable presumption only creates a *prima facie* case and once evidence opposing the presumption carries onto the case, the issue is determined on the basis of the evidence as if no presumption had ever existed. (*Diederich v. Walters*

On this record, it cannot seriously be questioned that Steven 'voluntarily expos[ed] himself to clear and obvious dangers.' *Stallings [v. Dick], supra,* at 210 N.E.2d [82] 87. Consequently, there could be no recovery against Ely, even if Steven's conduct was not the sole proximate cause of the collision, *Cousins v. Glassburn* (1940), 216 Ind. 431, at 439, 24 N.E.2d 1013, at 1016; *Koeneman v. Aldridge* (1954), 125 Ind.App. 176, at 192, 122 N.E.2d 345, at 353, for a plaintiff's (here, plaintiff's decedent's) contributory negligence is a complete defense, independent of any negligence of the defendant. *Chamberlain v. Deaconess Hospital, Inc.* (1975), 163 Ind.App. 324, at 329, 324 N.E.2d 172, at 176. Accordingly, there was no error in granting Ely's TR. 50 motion."

(1976), 65 Ill.2d 95, 2 Ill.Dec. 685, 357 N.E.2d 1128). If the trial court can say only one reasonable inference can be drawn from the facts, not only does the presumption cease to exist, but the question becomes one of law. *Heimann v. Kinnare* (1901), 190 Ill. 156, 60 N.E. 215." *Hardy v. Smith, supra,* 19 Ill.Dec. at 104-05, 378 N.E.2d at 605-06. In that case it was concluded "other than the 13-year-old minor's desire to get to the ice cream parlor, there are no surrounding circumstances which would excuse his failure to look." *Id.* 19 Ill.Dec. at 106, 378 N.E.2d at 607.

▆ In this jurisdiction, as in Illinois and many other states, *Hardy v. Smith, supra,* Annot., *Contributory Negligence of Children,* 77 A.L.R.2d 918 (1961) the standard of care of a child who is old enough to be capable of contributory negligence is whether he exercised the care under the circumstances of a child of like age, knowledge, judgment and experience. *Niegos v. Indiana Harbor Belt R. Co.,* (1954) 124 Ind. App. 430, 116 N.E.2d 550, *citing Indianapolis Railways, Inc. v. Williams,* (1945) 115 Ind.App. 383, 59 N.E.2d 586; *Town of Argos v. Harley, supra;* and *Bottorff v. South Construction Co., supra.* See also Indiana Pattern Jury Instructions (Civil) 5.27 and cases cited in the comments thereto. Applying this standard, we believe that in the instant case where the uncontradicted evidence was that the plaintiff Smith was an essentially normal 12-year-old boy, three months short of being 13, it follows from the evidence the court would have been justified in concluding he was contributorily negligent as a matter of law in crossing behind a southbound vehicle on a trafficked highway while admittedly failing to look for any northbound autos, so as to substantially cause his own injuries.

Smith acknowledged he had frequently crossed the street to go to the same store, perhaps once a week, that his parents had instructed him to "stop, look and listen" before crossing, and that he had been instructed on traffic safety in school, where he was an average student. *See generally Denman v. Youngblood,* (1953) 337 Mich.

383, 60 N.W.2d 170, and *Quillian v. Mathews,* (1970) 86 Nev. 200, 467 P.2d 111, *cited* in Annot., *Contributory Negligence of Children,* 77 A.L.R.2d 918, 934, in which cases similar factors were noted by the courts in holding an 8-year-old and a 6-year-old, respectively, guilty of contributory negligence, in the former case as a matter of law. In addition, we find significant as regards the commonly understood dangers and elemental precautions of crossing such a thoroughfare the observation made by our Supreme Court in an analogous situation—where a swimming pool was allegedly negligently constructed and operated—that "[h]ealthy boys of eleven years and younger must be deemed to know the perils of deep water, and it must be recognized that it is in the nature of boys to venture where it is dangerous." *City of Evansville v. Blue,* (1937) 212 Ind. 130, 140, 8 N.E.2d 224, 229. The Court in that case concluded "it is nonetheless negligent for one [such boy] who is not a good swimmer to venture into deep water, and, ordinarily, boys no more than adults may voluntarily and negligently put themselves in a position of known danger and charge others with responsibility for protecting them against their own voluntary acts." *Id.* We similarly believe the plaintiff in the instant case must be charged with knowledge of the dangers attendant in crossing a highway without first looking for oncoming traffic.

As noted above, Smith acknowledged that although he looked (and waited) for a car coming from his left, at no time did he look to his right, which was the direction from which the Diamond vehicle was approaching. Diamond stated she was unable to see Smith when he came across because her vision was obstructed by the southbound vehicle, and that when she did see him, he was only five or six feet away. Diamond braked and swerved to the right, but her car struck him when he was in her lane of traffic. Under these circumstance, Smith's behavior was a violation of Ind.Code 9-4-1-87(a), which states "[n]o pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an

immediate hazard"[7] and of Ind.Code 9–4–1–88(a), which states, "[e]very pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway." *See Carroll v. Ely, supra.*

Other courts have found contributory negligence of children as a matter of law based on similar facts. Thus, in *Duval v. Palmer, supra,* 113 Vt. at 391, 34 A.2d at 318–19, for example, the Court concluded with respect to the 11-year-old plaintiff in that case:

"It was his duty to look effectively for approaching cars and he is chargeable with seeing what he could have seen had he so looked. He stepped directly from behind a parked car directly into the path of the defendant's car when the latter was dangerously near to him. The defendant's motion for a directed verdict on the ground the evidence does not show the plaintiff free from contributory negligence should have been granted."

The Court observed the boy, who was traveling across the street from a bakery to his home, was "a bright boy and at the time of the accident was in the sixth grade at school." *Id.* at 391, 34 A.2d at 318. *See also Hardy v. Smith, supra; Burfict v. Trosclair,* (La.App.1971) 254 So.2d 640; *Fontenot v. Freudenstein, supra;* and *Couch v. Holland, supra,* all involving the negligence as a matter of law of plaintiffs fourteen years of age and younger when they failed to look for, or see, approaching vehicles while crossing roadways.

■ Nor is such conclusion altered by Smith's suggestion on appeal—which is unsupported by probative evidence—that had he looked, he might not have seen the Diamond vehicle. In this regard, Smith notes that his friend John Crane, Jr., positioned across the street from Smith, testified that "immediately" before the latter crossed the street and was struck, he [Crane] failed to see the Diamond car. However, there was no evidence suggesting Diamond was traveling at an excessive rate of speed or that the car would otherwise be invisible to Crane, Jr. "One may not be absolved of the charge of contributory negligence by asserting he looked and did not see when if he had looked he would have seen." *Hardy v. Smith, supra,* 19 Ill.Dec. at 105, 378 N.E.2d at 606. *Accord, Fontenot v. Freudenstein, supra; Duval v. Palmer, supra.* Moreover, Crane, Jr.'s actual testimony was simply that "I looked to my left. *I looked toward the Gas Barn"* (rather than directly down the highway) and that in so doing, he failed to see Diamond. While it may be that Smith's view of northbound traffic would have been obscured by the southbound car which he ran behind, it is clear that had he looked, he would have known it was unsafe to cross precisely because his view was thus blocked. In that event, Smith's act of crossing the street without making any effort to look would clearly be a "substantial factor in causing his injury." W. Prosser, Handbook of the Law of Torts, (4th ed. 1971) at 421.

For the foregoing reasons and authorities set forth herein, we affirm.

YOUNG, P. J., and CHIPMAN, J., concur.

---

7. See *Frankfort v. Owens,* (1976) 171 Ind.App. 566, 358 N.E.2d 184, 189, where it is stated "under this statute, a person can be contributorily negligent under the following circumstances. First, when he *leaves a curb* and walks or runs into the path of a vehicle which is so close that it is impossible for the driver to yield. Second, when he *leaves any other place of safety* and walks or runs into the path of a vehicle which is so close that it is impossible for the driver to yield." (Emphasis in original.) Although our Supreme Court has held violation of a statute of this nature by a child is in itself only some evidence of negligence, at least where the child's activity is one which does not require adult qualifications, *Bixenman v. Hall,* 251 Ind. 527, 242 N.E.2d 837, it is our conclusion based on all the evidence before the trial court that Smith's failure to look for approaching traffic before crossing the street was negligent as a matter of law considering "that degree of care that would ordinarily be exercised by children of like age, knowledge, judgment and experience under similar circumstances." *Id.* at 532, 242 N.E.2d at 839.